CHAPIN FITZGERALD SULLIVAN & BOTTINI LLP
    Edward D. Chapin (SBN: 053287)
    echapin@cfsblaw.com
    Jill M. Sullivan (SBN 185757)
    jsullivan@cfsblaw.com
    Francis A. Bottini, Jr. (SBN 175783)
    fbottini@cfsblaw.com
    Douglas J. Brown (SBN: 248673)
    dbrown@cfsblaw.com
550 West C Street, Suite 2000
San Diego, California  92101
Telephone:    (619) 241-4810
Facsimile:    (619) 955-5318

*Attorneys for Plaintiff Betty Guzman*

## UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Betty Guzman, on behalf of herself and all others similarly situated, <br><br> Plaintiff, <br><br> vs. <br><br> Bridgepoint Education, Inc.; Ashford University; and University of The Rockies, <br><br> Defendants. | Case: 11cv0069 WQH (WVG) <br><br> **Plaintiff's Memorandum of Points and Authorities in Opposition to Defendants' Motion to Dismiss First Amended Class Action Complaint** <br><br> Date:    March 6, 2012 <br> Time:    11:00 a.m. <br> Courtroom:    4 <br> Judge:    Honorable William Q. Hayes <br><br> **NO ORAL ARGUMENT UNLESS REQUESTED BY THE COURT** |

# Table of Contents

INTRODUCTION ................................................................................................. 1

FACTS ................................................................................................................. 2

LEGAL STANDARD. ......................................................................................... 3

ARGUMENT ....................................................................................................... 4

I.    Ms. Guzman Has Cured The Defects Identified By The Court
      And Has Demonstrated Both Article III And Statutory Standing.................... 4

      A.    Ms. Guzman's Allegations Of Injury-In-Fact, Causation,
            And Redressability Establish Article III Standing ............................... 4

      B.    Ms. Guzman's Allegations Of Financial Loss Establish
            Statutory Standing ................................................................................ 6

            (1)    *Tobacco II* And Its Progeny Require That Ms.
                   Guzman Allege Actual Reliance, But Do Not
                   Require Individualized Proof Of Reliance ................................. 6

            (2)    Ms. Guzman Has Demonstrated An Economic
                   Injury Resulting From Her Actual Reliance On
                   Bridgepoint's Misrepresentations ................................................ 7

      C.    Bridgepoint Lacks Any Basis To Argue That Ms. Guzman
            May Only Assert Claims Based On The Specific
            Misrepresentations She Relied Upon ..................................................... 8

            (1)    Bridgepoint's Challenge To Ms. Guzman's
                   Standing To Represent The Rockies' Students Is
                   Procedurally Improper ............................................................... 8

            (2)    Mr. Guzman Has Representative Standing Because
                   The Entire Class Was Injured As A Result Of A
                   Common Course Of Misconduct ............................................... 10

II.   Ms. Guzman's Concealment Claim Satisfies Rule 9(b)'s Pleading
      Standard Because She Specifies Bridgepoint's Material Omissions
      And Her Resultant Injury............................................................................. 11

      A.    Ms. Guzman Has Established All Five Elements Of Her
            Concealment Claim With Particularized Allegations ........................... 11

      B.    Bridgepoint Lacks A Basis To Argue That Ms. Guzman
            Fails To Identify The Persons Involved In The Non-
            Disclosure Of Material Facts ............................................................... 12

      C.    Bridgepoint's Arguments On Materiality And Causation
            Are Meritless ....................................................................................... 13

III.   Ms. Guzman Has Adequately Stated Claims For Negligent Misrepresentation And Violations Of The UCL, FAL, And CLRA Under Rule 8(a) And Rule 9(b) .......................................................... 14

    A.   Ms. Guzman's Claims For Negligent Misrepresentation And Violations Of The CLRA, UCL, And FAL Are Subject To Rule 8(a) ....................................................... 14

       (1)   The CLRA Claim Is Not Based On Fraud ............................ 14

       (2)   The UCL Claim Is Not Based On Fraud ............................... 15

       (3)   The FAL Claim Is Not Based On Fraud ................................ 15

       (4)   Bridgepoint's Contrary Argument Lacks Factual And Legal Support ...................................................... 16

       (5)   The Negligent Misrepresentation Claim Is Not Based On Fraud ................................................... 17

    B.   Even If Held To Rule 9(b)'s Standard, Ms. Guzman Sufficiently States Her Claims Because She Alleges Particularized Facts ....................................................... 18

       (1)   Ms. Guzman Adequately Alleged The "Who, What, When, Where, And How" Regarding Bridgepoint's Misrepresentations ................................ 19

       (2)   Ms. Guzman Alleges Reliance With Sufficient Particularity ................................................... 21

          (i)   Ms. Guzman Specifically Alleges That She Relied On Bridgepoint's Misrepresentations ................ 21

          (ii)   Bridgepoint's Argument Must Fail Because It Prematurely Raises A Factual Issue And Because Reliance Is Presumed ........................ 22

       (3)   Ms. Guzman Pleads Injury-In-Fact With Sufficient Particularity ................................................... 24

IV.   Bridgepoint's Arguments On Rule 8(a) And The CLRA Are Mere Red Herrings .......................................................... 24

CONCLUSION .......................................................... 25

1

**Table of Authorities**

2

Cases

3

*In re Actimmune Mktg. Litig.*,
   No. C 08-02376 MHP,

4

   2010 U.S. Dist. LEXIS 90480 (N.D. Cal. Sept. 1, 2010)....................................15

5

*Arnold v. United Artists Theatre Circuit, Inc.*,
   158 F.R.D. 439 (N.D. Cal. 1994) ...................................................................10

6

7

*Ashcroft v. Iqbal*,
   129 S. Ct. 1937 (2009) .............................................................. 3, 5, 20, 24

8

9

*Balistreri v. Pacifica Police Dep't*,
   901 F.2d 696 (9th Cir. 1988) .........................................................................3

10

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) ...................................................................................3

11

12

*Belodoff v. Netlist, Inc.*,
   No. SACV 07-00677 DOC (MLGx),

13

   2009 U.S. Dist. LEXIS 39903 (C.D. Cal. Apr. 17, 2009)................................18

14

*Bottoni v. Sallie Mae, Inc.*,
   No. C 10-3602 LB,

15

   2011 U.S. Dist. LEXIS 18874 (N.D. Cal. Feb. 11, 2011)..............................7, 8

16

17

*Bridge v. E*Trade Sec. LLC*,
   No. C-11-2521 EMC,

18

   2011 U.S. Dist. LEXIS 129791 (N.D. Cal. Nov. 9, 2011) .............................12

19

*Brownfield v. Bayer Corp.*,
   No. 09-cv-0444-JAM-GGH,

20

   2009 U.S. Dist. LEXIS 63057 (E.D. Cal. July 2, 2009) .................................24

21

*Californians for Disability Rights v. Mervyn's, LLC*,
   39 Cal. 4th 223 (Cal. 2006)............................................................................8

22

23

*Cattie v. Wal-Mart Stores, Inc.*,
   504 F. Supp. 2d 939 (S.D. Cal. 2007)..........................................................11

24

25

*In re Charles Schwab Corp. Sec. Litig.*,
   257 F.R.D 534 (N.D. Cal. 2009) ..................................................................18

26

*Clayworth v. Pfizer, Inc.*,
   49 Cal. 4th 758 (Cal. 2010)............................................................................6

27

28

*Cohen v. DirecTV, Inc.*,
    178 Cal. App. 4th 966 (Cal. Ct. App. 2009)................................................7

*In re Daou Sys., Inc.*,
    411 F.3d 1006 (9th Cir. 2005) .................................................................18

*Delarosa v. Boiron, Inc.*,
    275 F.R.D. 582 (C.D. Cal. 2011) .............................................................7, 8

*In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*,
    No. M02-1486 PJH,
    2006 U.S. Dist. LEXIS 39841 (N.D. Cal. June 5, 2006)..........................9, 10

*Eminence Capital, LLC v. Aspeon, Inc.*,
    316 F.3d 1048 (9th Cir. 2003) .................................................................25

*Ferrington v. McAfee, Inc.*,
    No. 10-CV-1455-LHK,
    2010 U.S. Dist. LEXIS 106600 (N.D. Cal. Oct. 5, 2010)........................16, 17

*In re First Alliance Mortg. Co.*,
    471 F.3d 977 (9th Cir. 2006) ..................................................................10

*Galvan v. KDI Distrib. Inc.*,
    No. SACV 08-0999-JVS (ANx),
    2011 U.S. Dist. LEXIS 127602 (C.D. Cal. Oct. 25, 2011) ........................13

*G.K. Las Vegas Ltd. P'ship v. Simon Prop. Group, Inc.*,
    460 F. Supp. 2d 1222 (D. Nev. 2006) .....................................................21

*Gillibeau v. City of Richmond*,
    417 F.2d 426 (9th Cir. 1969) ..................................................................9

*Grisham v. Philip Morris U.S.A., Inc.*,
    40 Cal. 4th 623 (2007) ......................................................................22, 23

*Gutierrez v. Wells Fargo Bank, N.A.*,
    730 F. Supp. 2d 1080 (N.D. Cal. 2010)...................................................9

*Hale v. Sharp Healthcare*,
    108 Cal. Rptr. 3d 669 (Cal. App. 4th Dist. 2010)....................................13

*Hall v. City of Santa Barbara*,
    833 F.2d 1270 (9th Cir. 1986) ................................................................3

*Havens Realty Corp. v. Coleman*,
    455 U.S. 363 (1982) ...............................................................................5

*Just Film, Inc. v. Protégé Invs., Inc.*,
No. C 10-1993 CW,
2010 U.S. Dist. LEXIS 130230 (N.D. Cal. Nov. 29, 2010) ..........................................20, 21

*Kaldenbach v. Mut. of Omaha Life Ins. Co.*,
178 Cal. App. 4th 830 (Cal. Ct. App. 2009)......................................................................11

*Kearns v. Ford Motor Co.*,
567 F.3d 1120 (9th Cir. 2009) ................................................................ 3, 19, 20, 22

*Keilholtz v. Super. Fireplace Co.*,
No. C 08-0836 CW,
2009 U.S. Dist. LEXIS 30732 (N.D. Cal. Mar. 30, 2009) ..........................................14, 16

*Kwikset Corp. v. Super. Ct.*,
51 Cal. 4th 310 (Cal. 2011).............................................................................................6

*Laster v. T-Mobile USA, Inc.*,
407 F. Supp. 2d 1181 (S.D. Cal. 2005)..........................................................8, 22, 24

*Lee v. Am. Nat'l Ins. Co.*,
260 F.3d 997 (9th Cir. 2001) ........................................................................................11

*London v. New Albertson's, Inc.*,
No. 08cv1173 H (CAB),
2008 U.S. Dist. LEXIS 76246 (S.D. Cal. Sept. 30, 2008)..........................................12, 13

*Lorenz v. Sauer*,
807 F.2d 1509 (9th Cir. 1987) ......................................................................................18

*Mairi Nunag–Tanedo v. E. Baton Rouge Parish Sch. Bd.*,
790 F. Supp. 2d 1134 (C.D. Cal. 2011) ........................................................................12

*Makaeff v. Trump Univ., LLC*,
No. 10cv0940 IEG (WVG),
2010 U.S. Dist. LEXIS 108467 (S.D. Cal. Oct. 12, 2010)..........................................23, 25

*Marchante v. Sony Corp. of Am.*,
No. 10cv0795 JLS (RBB),
2011 U.S. Dist. LEXIS 73755 (S.D. Cal. July 8, 2011).................................................22

*Marolda v. Symantec Corp.*,
672 F. Supp. 2d 992 (N.D. Cal. 2009).......................................................................22, 24

*In re Mattel, Inc.*,
588 F. Supp. 2d 1111 (C.D. Cal. 2008) ........................................................................15

*Meyer v. Sprint Spectrum L.P.*,
45 Cal. 4th 634 (2009) ....................................................................................................8

*Moore v. Kayport Package Express, Inc.*,
    885 F.2d 531 (9th Cir. 1989) ................................................................ 18, 19, 20

*Moss v. U.S. Secret Serv.*,
    572 F.3d 962 (9th Cir. 2009) ........................................................................... 3

*Nat'l Union Fire Ins. Co. v. Cambridge Integrated Servs. Group, Inc.*,
    171 Cal. App. 4th 35 (2009) ........................................................................... 17

*Neilson v. Union Bank of Cal., N.A.*,
    290 F. Supp. 2d 1101 (C.D. Cal. 2003) .............................................. 16, 17, 18

*Neubronner v. Milken*,
    6 F.3d 666 (9th Cir. 1993) ............................................................................ 18

*Palestini v. Homecomings Fin., LLC*,
    No. 10CV1049-MMA,
    2010 U.S. Dist. LEXIS 72985 (S.D. Cal. July 20, 2010) ........................... 22, 25

*Peterson v. Bank of Am., N.A.*,
    No. 09cv2570 WQH (CAB),
    2010 U.S. Dist. LEXIS 45399 (S.D. Cal. May 10, 2010) ............................... 21

*Peviani v. Natural Balance, Inc.*,
    774 F. Supp. 2d 1066 (S.D. Cal. 2011) ........................................................ 7, 8

*Roddenberry v. Roddenberry*,
    44 Cal. App. 4th 634 (Cal. Ct. App. 1996) .................................................... 11

*Rosendahl v. Bridgepoint Educ., Inc.*,
    No. 11cv0061 WQH (WVG),
    2011 U.S. LEXIS 119735 (S.D. Cal. Oct. 17, 2011) ....................... 6, 12, 21, 25

*Sanchez v. Bear Stearns Residential Mortg. Corp.*,
    No. 09cv2056 JLS (CAB),
    2010 U.S. Dist. LEXIS 46043 (S.D. Cal. May 11, 2010) ........................... 12, 13

*Shartsis Friese LLP v. JP Morgan Ret. Servs., LLC*,
    No. 0811064 SC,
    2008 U.S. Dist. LEXIS 58617 (N.D. Cal. Aug. 1, 2008) ........................... 20, 21

*Siemers v. Wells Fargo & Co.*,
    No. C 05-4518 WHA,
    2006 U.S. Dist. LEXIS 81097 (N.D. Cal. Oct. 24, 2006) ............................... 11

*Small v. Fritz Cos., Inc.*,
    30 Cal.4th 167 (2003) ................................................................................ 17, 18

*Sprewell v. Golden State Warriors*,
   266 F.3d 979 (9th Cir. 2001) ............................................... 22

*Stearns v. Ticketmaster Corp.*,
   655 F.3d 1013 (9th Cir. 2011) ............................................... 7

*Steel Co. v. Citizens for a Better Env't*,
   523 U.S. 83 (1998) ............................................... 4, 5, 6

*Swierkiewicz v. Sorema N.A.*,
   534 U.S. 506 (U.S. 2002) ............................................... 25

*In re Toyota Motor Corp. Hybrid Brake Mktg. Sales, Practices & Prods.*
   *Liab. Litig.*,
   2011 U.S. Dist. LEXIS 110206 (C.D. Cal. Sept. 12, 2011) ............................................... 21

*In re Tobacco II Cases*,
   46 Cal. 4th 298 (Cal. 2009) ............................................... *passim*

*Van Ness Townhouses v. Mar Indus. Corp.*,
   862 F.2d 754 (9th Cir. 1988) ............................................... 25

*Vasquez v. Super. Ct.*,
   4 Cal. 3d 800 (1971) ............................................... 23

*Vess v. Ciba–Geigy Corp., U.S.A.*,
   317 F.3d 1097 (9th Cir. 2003) ............................................... *passim*

*In re Wal-Mart Stores, Inc. Wage and Hour Litig.*,
   505 F. Supp. 2d 609 (N.D. Cal. 2007) ............................................... 9

*Yumul v. Smart Balance, Inc.*,
   733 F. Supp. 2d 1117 (C.D. Cal. 2010) ............................................... 16

**Rules and Statutes**

CAL. BUS. & PROF. CODE § 17204 ............................................... 6

CAL. BUS. & PROF. CODE § 17500 ............................................... 16

FED. R. CIV. P. 8(a) ............................................... *passim*

FED. R. CIV. P. 9(b) ............................................... *passim*

FED. R. CIV. P. 12(b)(6) ............................................... *passim*

FED. R. CIV. P. 15(a) ............................................... 25

CAL. CIV. CODE § 1710 ............................................... 2, 11, 18

CAL. CIV. CODE § 1750 ............................................... 15

11cv0069 WQH (WVG)

CAL. CIV. CODE § 1770(a) ..................................................... 25

**Other Authority**

WRIGHT ET AL.,
    FEDERAL PRACTICE AND PROCEDURE § 1785.1 (3d ed. 2005) ........................................... 9

11cv0069 WQH (WVG)

1

**INTRODUCTION**

2       From Defendant Bridgepoint Education, Inc.'s[1] Web sites and enrollment advisors,

3 Plaintiff Betty Guzman liked what she saw and heard: an affordable education, at an accredited

4 school, with bright prospects for employment.  Relying on this information, she enrolled in

5 Ashford.  But she ended up wasting thousands of dollars of her federal student aid on useless

6 classes.  Countless other Bridgepoint students suffered the same fate, losing not just money, but

7 the hope for an education.  Ms. Guzman's Complaint[2] charges that Bridgepoint violated federal

8 and state education and consumer laws, disseminating misleading statements and concealing

9 material information regarding its costs of attendance, accreditation, and students' employment

10 prospects.  *See* ¶¶ 3, 12, 21, 30, 35.

11       Moving to dismiss the Complaint, Bridgepoint attempts to hide behind arguments on

12 standing and pleading requirements.  Bridgepoint's motion should be denied for three reasons.

13       First, Ms. Guzman identifies the misrepresentations she relied upon before deciding to

14 attend Ashford.  ¶¶ 30, 35.  She alleges the loss of money.  ¶ 21.  Her allegations of actual

15 reliance and an economic loss establish standing under both Article III and Proposition 64.

16       Second, Ms. Guzman states a concealment claim because she specifies the information

17 Bridgepoint was legally required – but failed – to disclose.  ¶¶ 33-35.  Bridgepoint's arguments

18 on materiality and causation conflict with Ms. Guzman's allegations and lack a basis in law.

19       Third, Ms. Guzman's claims – for negligent misrepresentation and violations of the

20 Consumers Legal Remedies Act ("CLRA"), Unfair Competition Law ("UCL"), and False

21 Advertisement Law ("FAL") – are not based in fraud, and are thus subject to Federal Rule of

22 Civil Procedure 8(a).  Even if Rule 9(b) is applicable, her claims pass muster because she alleges

23 particularized facts regarding what was misrepresented and omitted, who made those

24 misrepresentations, and when, where, and how they were made.  ¶¶ 21, 30, 33-35, 50.

25       As discussed in detail below, the Court should deny Bridgepoint's motion.

26

27       [1] Bridgepoint operates Defendants Ashford University ("Ashford") and University of
The Rockies ("The Rockies").  Defendants are collectively referred to as "Bridgepoint."

28       [2] The allegations in the First Amended Class Action Complaint (the "Complaint") are
cited as "¶ ___."

## FACTS

This action arises from Bridgepoint's practices of using misrepresentations and material omissions, and employing high-pressure sales tactics to recruit students to attend its useless classes. Ms. Guzman identifies specific examples of these misrepresentations that she learned from listening to her enrollment advisor, who contacted her numerous times in 2006:

- Bridgepoint schools offered the most affordable education to students, and the tuition and costs were the "lowest" and could not be found elsewhere;

- Federal financial aid would cover all tuition, books, fees, and other costs, including but not limited to, costs for purchasing computers and software;

- The need to enroll quickly and to apply for maximum financial aid was urgent;

- Bridgepoint schools are fully accredited, and all credits awarded by Bridgepoint schools are transferable to other higher education institutions; and

- A high percentage of Bridgepoint graduates found jobs in their fields of studies immediately following graduation, and earned tens of thousands of dollars in annual income.

*See, e.g.*, ¶¶ 3, 30, 35. Bridgepoint also disseminates misleading statements through, and hides material information on, its Web sites. ¶¶ 33-37. Specifically, Ms. Guzman identifies a misleading statement that Carlita Shelton, the president of The Rockies, made about the quality of The Rockies' programs. ¶ 50. Relying on these misrepresentations, Ms. Guzman and thousands of other class members succumbed to Bridgepoint's relentless sales tactics before deciding to use their federal student loans to enroll in Bridgepoint schools. *See, e.g.*, ¶¶ 21, 30, 35, 117. As a result of their enrollment, they have all wasted thousands of dollars. ¶¶ 12, 21.

In the course of aggressively recruiting students through using misrepresentations, Bridgepoint violates multiple federal and state laws. Bridgepoint fails to disclose material information to prospective students, as required under Title IV of the Higher Education Act of 1965 ("Title IV") and the California Private Postsecondary Education Act of 2009 ("CPPEA"). ¶ 3. Bridgepoint also violates Title IV for compensating enrollment advisors solely based on the number of students they recruit. ¶¶ 7, 43, 67. Based on these allegations, Ms. Guzman asserts five claims: (1) violation of the UCL (¶¶ 90-97); (2) violation of the FAL (¶¶ 98-103); (3) violation of the CLRA (¶¶ 104-09); (4) concealment under California Civil Code § 1710(3) (¶¶ 110-15); and (5) negligent misrepresentation (¶¶ 116-19).

### LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) permits dismissal for "failure to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6).  A "motion to dismiss for failure to state a claim is viewed with disfavor and is rarely granted." *Hall v. City of Santa Barbara*, 833 F.2d 1270, 1274 (9th Cir. 1986).  Dismissal is appropriate only where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory.  *See Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988).

To sufficiently state a claim for relief and survive a Rule 12(b)(6) motion, a complaint "does not need detailed factual allegations," but the "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  When considering a motion to dismiss, a court must accept as true all "well-pleaded factual allegations." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1950 (2009).  "[F]or a complaint to survive a motion to dismiss, the non-conclusory factual content, and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009) (quotations omitted).

All non-fraud allegations need only meet Rule 8(a)'s notice pleading requirement.  For all allegations of fraud, Rule 9(b) still allows plaintiffs to allege "[m]alice, intent, knowledge, and other conditions of a [defendant's] mind . . . generally," but requires that they "state with particularity the circumstances constituting fraud." FED. R. CIV. P. 9(b).  To meet the particularity requirement, allegations of fraud state "'the who, what, when, where, and how of the misconduct charged.'" *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124 (9th Cir. 2009) (quotations omitted).  Rule 9(b) primarily aims "to provide defendants with adequate notice to allow them to defend the charge" and to protect the reputations of innocent defendants. *Id.*

But imposing Rule 9(b)'s requirements on non-fraud allegations "serves no similar reputation-preserving function" and "would impose a burden on plaintiffs not contemplated by the notice pleading requirements of Rule 8(a)." *Vess v. Ciba-Geigy Corp., U.S.A.*, 317 F.3d 1097, 1104 (9th Cir. 2003).  Thus, where not all claims in a complaint are based on fraud, a district court must refrain from imposing Rule 9(b)'s standard on the non-fraud allegations. *Id.*

**ARGUMENT**

**I.      Ms. Guzman Has Cured The Defects Identified By The Court And Has Demonstrated Both Article III And Statutory Standing**

In the October 19, 2011 order, the Court found that Ms. Guzman failed to allege standing under both Article III and Proposition 64.  *Guzman v. Bridgepoint Educ., Inc.*, No. 11cv0069 WQH (WVG), 2011 U.S. Dist. LEXIS 120611, at **14-15 (S.D. Cal. Oct. 19, 2011).  With respect to Article III standing, the Court held that Ms. Guzman "failed to allege sufficient facts to show that [Bridgepoint] made any misrepresentations to her," and "that she relied on any misrepresentations . . . and suffered an injury-in-fact caused by [Bridgepoint's] conduct."  *Id.*  With respect to statutory standing, the Court found that Ms. Guzman's allegations of her reliance on Bridgepoint's misrepresentations were too generalized to satisfy Proposition 64.  *Id.*  The Complaint cures both pleading defects identified by the Court.

**A.      Ms. Guzman's Allegations Of Injury-In-Fact, Causation, And Redressability Establish Article III Standing**

To satisfy the standing requirement under Article III of the United States Constitution, Ms. Guzman need only show (1) injury in fact; (2) causation between her injuries and Bridgepoint's misconduct; and (3) redressability – a likelihood that monetary and injunctive relief will redress her injuries.  *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 103 (1998).  Ms. Guzman has shown each of these three elements of constitutional standing.

First, she alleges that she wasted thousands of dollars on Bridgepoint's worthless classes.[3]  ¶ 21.  In fact, Bridgepoint is refusing to issue her diploma and release her transcripts on the basis that she owes over $3,600 in tuition.  *Id.*

Second, she alleges that her injuries were a result of Bridgepoint's inducement and false advertisement:

- she spoke "with an online enrollment advisor," and was "exposed to Bridgepoint's false advertisement . . . regarding . . . the tuitions and costs, federal financial aid, . . . accreditation, and post-enrollment employment prospects"; and

---

[3] In addition to monetary damages, Ms. Guzman has, like thousands of other class members, been deprived of accurate information about the true quality of the education at Bridgepoint, as well as her post-graduation employment prospects and student loan payment obligations.  *See* ¶ 3.

- she "succumbed to Bridgepoint's high pressure recruiting tactics, and relied on [its] false advertisement and misstatements before deciding to enroll at Ashford."

*Id.*; *see also* ¶¶ 5, 8, 60, 102.   To address the Court's concern regarding the lack of particularity concerning misrepresentations directed to her, Ms. Guzman provides specific examples of misstatements she relied upon before her enrollment in paragraph 30 of the Complaint:

- Bridgepoint schools offered the most affordable education to students, and the tuition and costs were the "lowest" and could not be found elsewhere;
- Federal financial aid would cover all tuition, books, fees, and other costs, including but not limited to costs for purchasing computers and software;
- The need to enroll as soon as possible and to apply for maximum financial aid was urgent;
- Bridgepoint schools are fully accredited, and all credits awarded by Bridgepoint schools are transferable to other higher education institutions; and
- A high percentage of Bridgepoint graduates found jobs in their fields of studies immediately following graduation, and earned tens of thousands of dollars in annual income.

Third, to recover damages and obtain injunctive relief, Ms. Guzman alleges claims under the common law and California's consumer protection statutes.   *See* ¶¶ 90-119.   Viewed as a whole, these allegations state Ms. Guzman's "distinct and palpable injury" as a result of Bridgepoint's misconduct.   *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 372 (1982).   Thus, she has Article III standing.

Choosing to ignore these well-pled allegations, Bridgepoint argues that Ms. Guzman's injuries are "conjectural and hypothetical" and that she fails to allege that she received Bridgepoint's misrepresentations.   But this argument lacks a legal and factual basis.

In terms of fact, Bridgepoint's argument conflicts with the allegations regarding Ms. Guzman's injuries and the misrepresentations upon which she relied.   *See* ¶¶ 21, 30.   As the Supreme Court has repeatedly instructed, these allegations must be accepted as true at the pleading stage.   *Iqbal*, 129 S. Ct. at 1950.   Thus, Bridgepoint's contention has no basis in fact.

In terms of law, Bridgepoint cites a single case: *Steel Co*.   But that case turns on plaintiff's failure to establish redressability – not whether plaintiff has sufficiently alleged an injury as a result of the underlying misconduct.   *See Steel Co.*, 523 U.S. at 105 (refusing to

resolve the question of the sufficiency of allegations of injury "because, assuming injury in fact, the complaint fails the third test of standing, redressability"). Thus, *Steel Co.* does not support Bridgepoint's baseless challenge to the sufficiency of Ms. Guzman's injury-in-fact allegations. Indeed, based on similar allegations in the related case, *Rosendahl v. Bridgepoint Educ., Inc.*, No. 11cv0061 WQH (WVG), the Court has upheld two other former Bridgepoint students' allegations of injury-in-fact as sufficient. 2011 U.S. LEXIS 119735, at *12 (S.D. Cal. Oct. 17, 2011). The Court should therefore reject Bridgepoint's argument on Article III standing here.

> **B.** **Ms. Guzman's Allegations Of Financial Loss Establish Statutory Standing**

> > **(1)** ***Tobacco II* And Its Progeny Require That Ms. Guzman Allege Actual Reliance, But Do Not Require Individualized Proof Of Reliance**

To satisfy the statutory standing requirements under California's Proposition 64, class representatives need only allege that they have "suffered injury in fact and [have] lost money or property as a result of" the underlying violations of the UCL, FAL, and CLRA. CAL. BUS. & PROF. CODE § 17204. In a trio of cases – *Tobacco II*, *Clayworth*, and *Kwikset*[4] – the California Supreme Court has set forth two rules for determining the level of specificity required for class representatives to demonstrate that they suffered injury as a result of defendants' misconduct. First, courts should interpret Proposition 64 "in light of its apparent purpose[]" to preserve standing for actual victims of statutory violations. *Kwikset*, 51 Cal. 4th at 317, 335 n.21. In other words, the court must thwart any attempt to make the standing requirements under Proposition 64 more onerous for actual victims. *Id.* at 335. Second, where class representatives assert claims arising from a systemic campaign of false advertisement and dissemination of misinformation, they need not "demonstrate individualized reliance on specific misrepresentations to satisfy the reliance requirement." *Tobacco II*, 46 Cal. 4th at 328. Class representatives meet Proposition 64's reliance requirement so long as they can generally allege that they relied on the underlying misrepresentations:

> [W]hile a plaintiff must allege that the defendant's misrepresentations were an immediate cause of the injury-causing

---

[4] *In re Tobacco II Cases*, 46 Cal. 4th 298 (Cal. 2009); *Clayworth v. Pfizer, Inc.*, 49 Cal. 4th 758 (Cal. 2010); *Kwikset Corp. v. Super. Ct.*, 51 Cal. 4th 310 (Cal. 2011).

conduct, the plaintiff is not required to allege that those misrepresentations were the sole or even the decisive cause of the injury-producing conduct. . . . [W]here, as here, a plaintiff alleges exposure to a long-term advertising campaign, the plaintiff is *not required to plead with an unrealistic degree of specificity* that the plaintiff relied on particular advertisements or statements.

*Id.* at 328 (emphasis added).[5]

Following these rules, the Ninth Circuit has reversed a district court's determination that a class claim for relief under the UCL requires "individualized proof of reliance and causation." *Stearns v. Ticketmaster Corp.*, 655 F.3d 1013, 1020 (9th Cir. 2011). District courts in California have repeatedly found standing where a class representative alleges generally that he or she relied on the underlying false advertisement. In *Peviani v. Natural Balance, Inc.*, for example, plaintiff alleges that she "purchased the [underlying] product after reading the false and misleading statements contained on the product's label." 774 F. Supp. 2d 1066, 1071 (S.D. Cal. 2011). Based on this allegation, the court refused to dismiss the complaint because plaintiff sufficiently alleged reliance under Proposition 64. *Id.*[6]

### (2) Ms. Guzman Has Demonstrated An Economic Injury Resulting From Her Actual Reliance On Bridgepoint's Misrepresentations

Viewed under *Peviani*, *Delarosa*, and *Bottoni*, Ms. Guzman's allegations pass muster. Ms. Guzman alleges that she was exposed to Bridgepoint's misrepresentations and material omissions through accessing its Web sites (¶ 35) and speaking with one of its enrollment advisors (¶ 21). She decided to enroll because she succumbed to Bridgepoint's high-pressure sales tactics and relied on its misrepresentations about, among other things, the quality and affordability of its classes. *See, e.g.*, ¶¶ 12, 21, 30. As a result of such reliance, she suffered an economic injury because she spent thousands of dollars to take classes at Ashford. ¶ 12, 21.

---

[5] Actual reliance is a requirement of standing under the CLRA. *See Cohen v. DirecTV, Inc.*, 178 Cal. App. 4th 966, 973 (Cal. Ct. App. 2009).

[6] *See also Delarosa v. Boiron, Inc.*, 275 F.R.D. 582, 586 (C.D. Cal. 2011) (holding that plaintiff established standing under the UCL and CLRA by alleging that she "suffered an economic injury because she purchased [the underlying product] in reliance of its promise of [certain medicinal] relief"); *Bottoni v. Sallie Mae, Inc.*, No. C 10-3602 LB, 2011 U.S. Dist. LEXIS 18874, at **15-16, 36 (N.D. Cal. Feb. 11, 2011) (holding that plaintiffs established standing under the UCL and CLRA by alleging that collection fees were unreasonably high, even if they did not have to pay for them).

These allegations are more detailed and particularized than those in *Peviani*, *Delarosa*, and *Bottoni* because Ms. Guzman identifies the misrepresentations she relied on and the source of those misrepresentations – the Internet and the Bridgepoint enrollment advisor she spoke with the month before her enrollment in 2006. *See* ¶ 30. Thus, Ms. Guzman has sufficiently established standing under the UCL, FAL, and CLRA.

Arguing the contrary, Bridgepoint asserts that Ms. Guzman fails to "allege both injury in fact and injury resulting from [its] [mis]representations." Dkt. No. 27-1 at 14. As paragraphs 12, 21, 30, and 35 of the Complaint show, however, Ms. Guzman has done so. The two cases cited by Bridgepoint highlight its refusal to face up to Ms. Guzman's clear and particularized allegations of reliance. In *Laster v. T-Mobile USA, Inc.*, the court found a lack of standing because plaintiffs failed to allege "they relied on [d]efendants' advertisements." 407 F. Supp. 2d 1181, 1194 (S.D. Cal. 2005). Similarly, plaintiff in *Californians for Disability Rights v. Mervyn's, LLC* "did not claim to have suffered any harm as a result of [defendant's] conduct." 39 Cal. 4th 223, 227 (Cal. 2006). In contrast to the complaints in *Laster* and *Mervyn's*, the Complaint here clearly and specifically alleges Ms. Guzman's reliance on Bridgepoint's misrepresentations. *See* ¶¶ 12, 21, 30. Therefore, these cases provide Bridgepoint no aid. Lacking legal and factual support,[7] Bridgepoint's argument should be rejected.

### C. Bridgepoint Lacks Any Basis To Argue That Ms. Guzman May Only Assert Claims Based On The Specific Misrepresentations She Relied Upon

#### (1) Bridgepoint's Challenge To Ms. Guzman's Standing To Represent The Rockies' Students Is Procedurally Improper

Under the disguise of a standing inquiry, Bridgepoint asserts that Ms. Guzman lacks "standing to bring any claims against The Rockies." Dkt. No. 27-1 at 8. In fact, Bridgepoint is challenging the typicality of Ms. Guzman's claims and the adequacy of her representation. Such challenges belong to the class certification stage. As the California Supreme Court explained, "[r]epresentative parties who have a direct and substantial interest have standing; the

---

[7] Bridgepoint's citation to *Meyer v. Sprint Spectrum L.P.*, 45 Cal. 4th 634 (2009), is inapposite because *Meyer* turns on plaintiff's failure to allege an injury based on the mere presence of allegedly unconscionable contract terms, which defendant did not seek to enforce. *Meyer* has nothing to do with the reliance requirement under Proposition 64.

1   question whether they may be allowed to present claims on behalf of others who have similar,

2   but not identical, interests depends not on standing, but on an assessment of typicality and

3   adequacy of representation." *Tobacco II*, 46 Cal. 4th at 319 (quoting 7AA WRIGHT ET AL.,

4   FEDERAL PRACTICE AND PROCEDURE § 1785.1 at 388-89 (3d ed. 2005)).  Bridgepoint's

5   challenges belong to the class certification process, and are thus premature at the pleading

6   stage.  *Gillibeau v. City of Richmond*, 417 F.2d 426, 432 (9th Cir. 1969) ("compliance with Rule

7   23 is not to be tested by a motion to dismiss").[8]  The Court should therefore reject

8   Bridgepoint's arguments on typicality and adequacy.  *See Gutierrez v. Wells Fargo Bank, N.A.*,

9   730 F. Supp. 2d 1080, 1134 (N.D. Cal. 2010) (following *Tobacco II* and rejecting a similar

10   argument).

11        Even if considered on the merits, however, Bridgepoint's challenges to the typicality of

12   Ms. Guzman's claims and the adequacy of her representation would fail at the class certification

13   stage.  Courts have found that Rule 23(a)'s typicality and adequacy requirements are satisfied

14   where, as here, the claims of the class representative and other class members "arise from the

15   same events or course of conduct and are based on the same legal theory."  *E.g.*, *In re Dynamic*

16   *Random Access Memory (DRAM) Antitrust Litig.*, No. M02-1486 PJH, 2006 U.S. Dist. LEXIS

17   39841, at *31 (N.D. Cal. June 5, 2006).  In *DRAM*, for example, the class representatives

18   asserted antitrust claims against a group of defendants, alleging "an overarching price-fixing

19   conspiracy to fix the price for DRAM" (dynamic random access memory) – an electronic

20   microchip that was used to store digital information.  *Id.*  Like Bridgepoint here, defendants

21   argued that typicality was lacking because "there [were] different types of DRAM, different

22   categories of customers that purchased DRAM, and different sales channels through which

23   those customers [bought] DRAM," while the class representatives "all belong[ed] only to that

24   particular category of customers who purchased DRAM directly through [one defendant]."  *Id.*

25   at **31-32.  The Northern District of California rejected this argument, and found that

26

27        [8] *See also In re Wal–Mart Stores, Inc. Wage and Hour Litig.*, 505 F. Supp. 2d 609, 615
     (N.D. Cal. 2007) ("dismissal of class allegations at the pleading stage should be done rarely and

28   . . . because 'the shape and form of a class action evolves only through the process of
     discovery") (internal quotations omitted).

1   typicality was satisfied because the class representatives "purchased DRAM from defendants at

2   a price that was artificially inflated as a result of the alleged price-fixing conspiracy." *Id.* at *35.

3   The court also found the class representatives to be adequate based on the absence of

4   "discernible conflicts of interest between the named plaintiffs and the absent class members."

5   *Id.* at *36.  The same reasoning applies here because Ms. Guzman and other class members

6   suffered injuries as a result of Bridgepoint's misrepresentations and omissions, regardless of

7   which Bridgepoint school they attended.  Thus, Ms. Guzman will defeat Bridgepoint's

8   arguments on typicality and adequacy at the class certification stage.

9   **(2)      Ms. Guzman Has Representative Standing Because The Entire Class**

10  **Was Injured As A Result Of A Common Course Of Misconduct**

11         Even if the Court considers Ms. Guzman's representative standing at this juncture,

12  Bridgepoint's argument fails.  As the Complaint states, this action arises from Bridgepoint's

13  recruiting practices predicated on misrepresentations and high-pressure sales tactics:

    > Bridgepoint engaged in a *pattern of improper and unlawful conduct*
14  > in order to recruit students . . . throughout the Class Period.
    > [Bridgepoint] exploited Plaintiff and all members of the Class,
15  > through the use of *standardized*, misleading recruitment tactics[.]

16  ¶ 3 (emphasis added).  Bridgepoint's misrepresentations were "uniform" (¶ 4), and were

17  disseminated through the Internet (¶ 35) and oral scripts given by its enrollment advisors (¶

18  21).  In short, all class members, regardless of whether they attended Ashford or The Rockies,

19  received the same misrepresentations, and were damaged as a result of Bridgepoint's common

20  course of misconduct.  *See, e.g.*, ¶¶ 4, 31, 43, 46, 51, 79.

21         Under Ninth Circuit law, allegations of a common course of misconduct allow a single

22  victim to serve as a representative in a class action.  *See In re First Alliance Mortg. Co.*, 471 F.3d

23  977, 990 (9th Cir. 2006).  "The claims of the named plaintiffs need not be identical to the

24  claims of the class; they need only arise from the same remedial and legal theories."  *See*, *e.g.*,

25  *Arnold v. United Artists Theatre Circuit, Inc.*, 158 F.R.D. 439, 449 (N.D. Cal. 1994) (plaintiff's

26  ADA claims against a movie theater chain were typical even though individual theaters

27  discriminated against disabled customers in different ways).  Accordingly, because Ms.

28  Guzman has been the victim of Bridgepoint's course of illegal conduct, she can represent others

                                                10                        11cv0069 WQH (WVG)

1    victimized by that conduct regardless of which Bridgepoint school they enrolled in.

2           Arguing the contrary, Bridgepoint relies on three inapposite cases – *Lee*, *Cattie*, and

3    *Siemers* – where the courts found a lack of standing because plaintiffs could not "demonstrate

4    the requisite injury" under Article III, *Lee v. Am. Nat'l Ins. Co.*, 260 F.3d 997, 1001-02 (9th

5    Cir. 2001), or reliance under Proposition 64, *Cattie v. Wal-Mart Stores, Inc.*, 504 F. Supp. 2d

6    939, 947 (S.D. Cal. 2007) (Burns, J.); *see also Siemers v. Wells Fargo & Co.*, No. C 05-4518

7    WHA, 2006 U.S. Dist. LEXIS 81097 (N.D. Cal. Oct. 24, 2006) (holding that plaintiff failed

8    to allege injury and reliance).  Unlike Ms. Guzman, plaintiffs in *Lee*, *Cattie*, and *Siemers* did not

9    allege a common course of misconduct.  Moreover, because, as demonstrated above, Ms.

10   Guzman has adequately established injury-in-fact and reliance, Bridgepoint's reliance on *Lee*,

11   *Cattie*, and *Siemers* is misplaced.  Absent legal support, Bridgepoint's argument lacks merit.

12   **II.    Ms. Guzman's Concealment Claim Satisfies Rule 9(b)'s Pleading Standard Because She Specifies Bridgepoint's Material Omissions And Her Resultant Injury**

13

14          **A.    Ms. Guzman Has Established All Five Elements Of Her Concealment Claim With Particularized Allegations**

15          To state a concealment claim under California Civil Code § 1710(3), a plaintiff must

16   allege five elements:  (1) the defendant must have concealed or suppressed a material fact; (2)

17   the defendant must have been under a duty to disclose the fact to the plaintiff; (3) the

18   defendant must have intentionally concealed or suppressed the fact with the intent to defraud

19   the plaintiff; (4) the plaintiff must have been unaware of the fact and would not have acted as

20   he did if he had known of the concealed or suppressed fact; and (5) as a result of the

21   concealment or suppression of the fact, the plaintiff must have sustained damage.  *Kaldenbach*

22   *v. Mut. of Omaha Life Ins. Co.*, 178 Cal. App. 4th 830, 850 (Cal. Ct. App. 2009) (quoting

23   *Roddenberry v. Roddenberry*, 44 Cal. App. 4th 634, 665-66 (Cal. Ct. App. 1996)).

24          Even under Rule 9(b)'s pleading standard, Ms. Guzman has alleged each element with

25   particularity.  She identifies material omissions in Bridgepoint's advertisements to prospective

26   students regarding, among other things, the "true cost of attendance," the "quality of academic

27   instruction," the "accreditation," and the "post-graduation employability and earnings

28   potential."  *E.g.*, ¶ 3.  Bridgepoint has a duty under Title IV and the CPPEA to disclose such

information to Ms. Guzman and other class members.  ¶¶ 3, 95, 112.  By failing to comply with the duty of disclosure, Bridgepoint "intended to induce [Ms. Guzman and other class members] to enroll in Bridgepoint schools."  ¶ 113.  Ms. Guzman and other class members were unaware of the concealed facts (¶ 89), and would not have decided to enroll had they known, among other things, the high costs of attendance and the high student loan default rate of Bridgepoint students.  *See* ¶¶ 11-12, 44-45, 79, 111, 114.  As a result of the concealment, Ms. Guzman and other class members sustained injuries.  *See* ¶¶ 5, 21, 102, 115.  These allegations provide Bridgepoint with sufficient notice of Ms. Guzman's concealment claim, and thus satisfy Rule 9(b)'s particularity requirements.  *See Vess*, 317 F.3d at 1104.  Based on similar allegations, district courts have repeatedly refused to dismiss concealment claims.  *See, e.g.*, *Bridge v. E*Trade Sec. LLC*, No. C-11-2521 EMC, 2011 U.S. Dist. LEXIS 129791, at **13-14 (N.D. Cal. Nov. 9, 2011) (upholding a concealment claim because plaintiffs have identified the allegedly concealed information and a duty to disclose); *Mairi Nunag-Tanedo v. E. Baton Rouge Parish Sch. Bd.*, 790 F. Supp. 2d 1134, 1142 (C.D. Cal. 2011) (same).

## B.     Bridgepoint Lacks A Basis To Argue That Ms. Guzman Fails To Identify The Persons Involved In The Non-Disclosure Of Material Facts

Ms. Guzman specifically alleges that Bridgepoint hides material information from prospective students on its Web sites.  *See* ¶¶ 33-35.  In fact, "prospective students are systematically orally misled by Bridgepoint enrollment advisors, who misrepresent the true costs of attendance through scripts provided by Bridgepoint."  ¶ 43.  She also identifies a misleading statement in which Carlita Shelton, the president of The Rockies, omitted material information about the quality of The Rockies' programs.  *See* ¶ 50.  In addition, she alleges that the enrollment advisor with whom she spoke numerous times in 2006 made specific misrepresentations to her.  ¶ 30.  These allegations satisfy Rule 9(b)'s requirement to allege the persons involved in the concealment.  *See Rosendahl*, 2011 U.S. Dist. LEXIS 119735, at **18-19 (holding that plaintiff's identification of an unnamed enrollment advisor sufficed).

Arguing the contrary, Bridgepoint relies on two district court decisions, *Sanchez* and *London*.  But both decisions are distinguishable.  In *Sanchez v. Bear Stearns Residential Mortg. Corp.*, plaintiff failed to identify the source of the duty requiring defendants to make disclosures

and the information they failed to disclose.  No. 09cv2056 JLS (CAB), 2010 U.S. Dist. LEXIS 46043, at **9-10 (S.D. Cal. May 11, 2010).  Similarly, plaintiff in *London v. New Albertson's, Inc.* failed to "establish the requisite duty, cognizable damages, causation, or any materially undisclosed information."  No. 08cv1173 H (CAB), 2008 U.S. Dist. LEXIS 76246, at *22 (S.D. Cal. Sept. 30, 2008).  In contrast, Ms. Guzman identifies in detail Bridgepoint's material omissions (*see* ¶ 3), the laws imposing a duty to disclose (¶¶ 95, 112), and her damages caused by Bridgepoint's omissions (¶¶ 5, 21, 102, 112, 115).  Thus, Bridgepoint's reliance on *Sanchez* and *London* is misplaced.  Without legal support, Bridgepoint's attack on Ms. Guzman's well-pled concealment claim should be rejected.

**C.**      **Bridgepoint's Arguments On Materiality And Causation Are Meritless**

Citing no authority, Bridgepoint argues that Ms. Guzman fails to allege materiality of the omissions and causation.  Ms. Guzman alleges that Bridgepoint concealed specific information regarding the "true cost of attendance," the "quality of academic instruction," the "accreditation," and the "post-graduation employability and earnings potential."  *E.g.*, ¶ 3.  On their face, the costs, accreditation, and employment prospects are material to any student's decision on whether to attend a school.  More important, both Title IV and the CPPEA *require* disclosure of such information; thus, the materiality of such information cannot be questioned.  *See* ¶¶ 3, 95, 112.

Bridgepoint's argument on materiality is a disguised attempt to challenge Ms. Guzman's reliance on its omissions.  Because the omitted information is facially material, reliance is presumed.  *E.g.*, *Galvan v. KDI Distrib. Inc.*, No. SACV 08-0999-JVS (ANx), 2011 U.S. Dist. LEXIS 127602, at *32 (C.D. Cal. Oct. 25, 2011) (an allegation of concealment gives rise to a "presumption of reliance") (citing *Hale v. Sharp Healthcare*, 108 Cal. Rptr. 3d 669, 678 (Cal. App. 4th Dist. 2010)).  Bridgepoint's argument should therefore be rejected.

Bridgepoint's argument on causation should also be rejected because Bridgepoint ignores the allegations that Ms. Guzman would not have decided to enroll in Bridgepoint had she known the high costs of attendance and the loan default rate.  *See* ¶¶ 11-12, 44-45, 79, 111, 114.  Their enrollment caused injuries.  *See* ¶¶ 5, 21, 102, 115.  No more is required.

### III.   Ms. Guzman Has Adequately Stated Claims For Negligent Misrepresentation And Violations Of The UCL, FAL, And CLRA Under Rule 8(a) And Rule 9(b)

#### A.   Ms. Guzman's Claims For Negligent Misrepresentation And Violations Of The CLRA, UCL, And FAL Are Subject To Rule 8(a)

As the Ninth Circuit and the district courts in California have stated, "[f]raud is not an essential element either of a CLRA or a UCL claim." *Keilholtz v. Super. Fireplace Co.*, No. C 08-0836 CW, 2009 U.S. Dist. LEXIS 30732, at *14 (N.D. Cal. Mar. 30, 2009) (citing *Vess*, 317 F.3d at 1104-05). "In a case where fraud is not an essential element of a claim, only allegations ('averments') of fraudulent conduct must satisfy the heightened pleading requirements of Rule 9(b)." *Vess*, 317 F.3d at 1105. In *Vess*, the Ninth Circuit considered the sufficiency of CLRA and UCL claims that involved both "some fraudulent and some non-fraudulent conduct." *Id.* at 1104. The court explained that plaintiffs "may choose not to allege a unified course of fraudulent conduct . . . but to rather allege some fraudulent and some non-fraudulent conduct." *Id.* In such cases, the court held, "only the allegations of fraud are subject to Rule 9(b)'s heightened pleading requirements." *Id.*

Like the plaintiff in *Vess*, Ms. Guzman's UCL, FAL, and CLRA claims allege non-fraudulent conduct. The fact that those claims "appear in a complaint alongside" Ms. Guzman's fraud-based concealment claim does not elevate the pleading standard. *Id.* As the court in *Vess* explained, subjecting Ms. Guzman's non-fraud based claims to Rule 9(b)'s heightened pleading standard "would impose a burden on plaintiffs not contemplated by the notice pleading requirements of Rule 8(a)." *Id.* As discussed below, Ms. Guzman's CLRA, UCL, and FAL claims do not sound in fraud.

#### (1)   The CLRA Claim Is Not Based On Fraud

In her CLRA claim, Ms. Guzman alleges that Bridgepoint "violated the [CLRA] by misrepresenting to [her] and the [c]lass the true cost of attendance at Ashford and The Rockies, by misrepresenting": (1) "the quality of academic instruction at these schools"; (2) "students' post-graduation employability, job placement prospects, and qualification for professional licensure"; and (3) "prospective students' federal financial assistance options." ¶ 107. This claim is not based on any contention – and the CLRA does not require – that

1    Bridgepoint had any fraudulent intent.  *See* CAL. CIVIL CODE §§ 1750 *et seq.*

2          In similar cases, district courts in California have held that CLRA claims are subject

3    only to the notice pleading standard under Rule 8(a).  In *In re Mattel, Inc.*, for example,

4    consumers sued toy manufacturers and retailers under the CLRA, alleging that they "sold

5    certain toys that were defective and unsafe, and made actionable representations about the

6    quality of the products." 588 F. Supp. 2d 1111, 1114 (C.D. Cal. 2008).  Defendants moved to

7    dismiss arguing that the allegations lacked particularity under Rule 9(b).  Rejecting this

8    argument, the Central District of California held that because plaintiffs did not allege an intent

9    to defraud, they need *not* make particularized allegations:

10                 Plaintiffs merely allege that the representations were likely to
                   deceive and that [p]laintiffs were damaged by the deception; they
11                 make no effort to allege common law fraud elements such as
                   intent to deceive or any overarching fraudulent scheme to defraud
12                 the individual Plaintiffs or the public.

13   *Id.* at 1118.  The same reasoning applies here and precludes the application of Rule 9(b).

14         **(2)    The UCL Claim Is Not Based On Fraud**

15         With respect to her UCL claim, Ms. Guzman alleges that Bridgepoint "breached its

16   contracts with [all class members], breached the implied covenant of good faith and fair

17   dealing, violated the [CLRA], violated [the False Advertising Act], negligently misrepresented

18   facts to Plaintiffs and the Class, and violated Title IV."  ¶ 94.  Ms. Guzman's UCL claim is

19   primarily predicated upon Bridgepoint's violations of statutes and regulations.  *See* ¶¶ 94-95.

20   Notably absent from this list is fraud.  Moreover, none of the underlying claims upon which

21   Ms. Guzman does predicate her UCL claim constitute fraudulent conduct.  *E.g.*, *In re*

22   *Actimmune Mktg. Litig.*, No. C 08-02376 MHP, 2010 U.S. Dist. LEXIS 90480, at *28 n.3

23   (N.D. Cal. Sept. 1, 2010) (because plaintiff's claims under the FDCA and Sherman Laws do

24   not require proof of scienter or intent to defraud, and because plaintiff's UCL claim was raised

25   under the statute's "unlawful" prong, the complaint does not sound in fraud).

26         **(3)    The FAL Claim Is Not Based On Fraud**

27         Ms. Guzman's FAL claim describes Bridgepoint's false and misleading statements and

28   explains that they were made "with the intent to induce the general public . . . to enroll in

15                                11cv0069 WQH (WVG)

1   [Bridgepoint's] online degree and certification programs." ¶ 99.  This description does not

2   indicate fraudulent conduct, but instead merely tracks the language of the FAL, which states:

3
It is unlawful for any . . . corporation . . . *with intent* directly or
indirectly . . . *to induce the public* to enter into any obligation . . .
4
to make or disseminate . . . any statement . . . which is untrue or
misleading, and which is known or which by the exercise of
5
reasonable care should be known, to be untrue or misleading . . . .

6   CAL. BUS. & PROF. CODE § 17500 (emphasis added).

7           **(4)     Bridgepoint's Contrary Argument Lacks Factual And Legal Support**

8           Arguing that Ms. Guzman's CLRA, UCL, and FAL claims are fraud-based,

9   Bridgepoint latches onto the Complaint's use of the words "systematic," "pattern," and

10  "deceptive," to describe Bridgepoint's practices.  According to Bridgepoint, these words show

11  that Ms. Guzman's claims are fraud-based.  Not so.  In the Complaint, Ms. Guzman clearly

12  and consistently alleges that Bridgepoint's misconduct was "reckless[]" and "negligent[]." *See*,

13  *e.g.*, ¶¶ 29, 94, 117.  Her allegations of a pattern of misconduct accurately describe

14  Bridgepoint's business model, which is predicated on the practice of recruiting as many

15  students as possible in order to obtain the maximum amount of federally guaranteed financial

16  aid.  This description explains the context in which Bridgepoint failed to disclose to students

17  material facts about its schools; the description does not, however, allege intentional fraud.  Nor

18  is the description a necessary element of any of Ms. Guzman's claims.  *See Keilholtz*, 2009 U.S.

19  Dist. LEXIS 30732, at *14.  The Court should therefore reject Bridgepoint's

20  mischaracterization of Ms. Guzman's claims.

21          In support of its argument, Bridgepoint relies on three district court decisions, *Yumul*,

22  *Neilson*, and *Ferrington*, each of which is distinguishable.  *Yumul* is inapposite because, unlike

23  Ms. Guzman, the plaintiff in *Yumul* did "not dispute that Rule 9(b) govern[ed] the pleading of

24  her claims, as each alleges false advertising and false representations regarding the properties of

25  the [underlying] product." *Yumul v. Smart Balance, Inc.*, 733 F. Supp. 2d 1117, 1123 (C.D.

26  Cal. 2010).  Nor are *Neilson* and *Ferrington* applicable because plaintiffs in both cases alleged a

27  scheme to defraud.  *Neilson* involved a "Ponzi scheme that defrauded hundreds of investors out

28  of hundreds of millions of dollars." *Neilson v. Union Bank of Cal., N.A.*, 290 F. Supp. 2d 1101,

1108 (C.D. Cal. 2003).  Plaintiffs there alleged that defendants knowingly participated in and facilitated the Ponzi scheme." *Id.*  Similarly, plaintiffs in *Ferrington* alleged "intentional misrepresentation[s]," and described the underlying conduct as a "scheme." *Ferrington v. McAfee, Inc.*, No. 10-CV-1455-LHK, 2010 U.S. Dist. LEXIS 106600, at **14-15 (N.D. Cal. Oct. 5, 2010).  In contrast, nowhere in the Complaint does Ms. Guzman allege intentional misrepresentation or a fraudulent scheme.  Nor does Ms. Guzman use the term "scheme" or "fraud" to describe Bridgepoint's practices.[9]  In fact, Ms. Guzman explicitly alleges that Bridgepoint acted "recklessly" and "negligently." *E.g.*, ¶ 29.  More important, unlike the plaintiffs in *Neilson* and *Ferrington*, Ms. Guzman relies not on the UCL's fraudulent prong, but on the illegal prong.  *See Ferrington*, 2010 U.S. Dist. LEXIS 106600, at **26-29 (applying Rule 9(b) to the claims based on UCL's fraudulent prong).  Thus, *Neilson* and *Ferrington* cannot guide this Court's consideration of Ms. Guzman's Complaint.  Because neither the structure nor the language of the Complaint show that Ms. Guzman's claims are predicated upon a "unified course of fraudulent conduct," the Court should refrain from elevating the pleading standard governing Ms. Guzman's CLRA, UCL, and FAL claims.  *See Vess*, 317 F.3d at 1104.

### (5)    The Negligent Misrepresentation Claim Is Not Based On Fraud

Under California law, the elements of negligent misrepresentation are (1) the misrepresentation of a past or existing material fact; (2) without reasonable ground for believing it to be true; (3) with intent to induce another's reliance on the fact misrepresented; (4) justifiable reliance on the misrepresentation; and (5) resulting damage.  *Nat'l Union Fire Ins. Co. v. Cambridge Integrated Servs. Group, Inc.*, 171 Cal. App. 4th 35, 50 (2009).  Unlike fraud, negligent misrepresentation does not require knowledge of falsity or intent to defraud.  *Small v. Fritz Cos., Inc.*, 30 Cal. 4th 167, 173-74 (2003).   Rather, negligent misrepresentation may be shown when there is a false statement made by "one who has no reasonable ground for believing it to be true." *Id.*  As the California Supreme Court stated in *Small*, "California [state] courts have never decided whether the tort of negligent misrepresentation . . . must . . .

---

[9] Ms. Guzman only uses the word "scheme" to describe Bridgepoint's compensation structure for enrollment advisors.

be pled with specificity." *Id.*[10]  Nor has the Ninth Circuit ever subjected a negligent misrepresentation claim under California Civil Code § 1710(3) to Rule 9(b) where the complaint asserts non-fraud based claims.[11]  In fact, the Ninth Circuit has refused to hold allegations of innocent or negligent misrepresentations to Rule 9(b)'s heightened pleading standard.  *See In re Daou Sys., Inc.*, 411 F.3d 1006, 1027 (9th Cir. 2005).[12]

Here, Ms. Guzman alleges only that Bridgepoint lacked reasonable grounds for believing its representations to be true.  ¶ 117.  This allegation does not rise to the level of fraud.  *Daou Sys.*, 411 F.3d at 1027.  Because she alleges each element of her negligent misrepresentation claim (*see* ¶¶ 116-19), these allegations are sufficient under Rule 8(a).

**B.  Even If Held To Rule 9(b)'s Standard, Ms. Guzman Sufficiently States Her Claims Because She Alleges Particularized Facts**

Even if the Court finds that any portion of Ms. Guzman's claims sounds in fraud, the Court should relax Rule 9(b)'s requirements because the facts of Bridgepoint's misconduct are "peculiarly within [its] knowledge." *Neubronner v. Milken*, 6 F.3d 666, 672 (9th Cir. 1993). Where, as here, plaintiffs allege corporation fraud, the details of which are only known to defendants, plaintiffs may satisfy Rule 9(b)'s requirements by alleging facts based on information and belief.  *See Moore v. Kayport Package Express, Inc.*, 885 F.2d 531, 540 (9th Cir. 1989).  Under a relaxed Rule 9(b) standard, Ms. Guzman's allegations are more than sufficient.

In any event, Ms. Guzman's allegations withstand Bridgepoint's motion even if Rule 9(b) is strictly applied, because, as discussed below, they are "accompanied by the 'who, what, when, where, and how' of the misconduct charged." *Kearns*, 567 F.3d at 1124.

---

[10] In *Small*, the court applied a heightened pleading standard to the negligent misrepresentation claim, which was pled alongside a claim for securities fraud. *See Small*, 30 Cal.4th at 173-74.

[11] Bridgepoint's citation to *Lorenz v. Sauer*, 807 F.2d 1509 (9th Cir. 1987), is inapposite because that case has nothing to do with pleading standards for negligent misrepresentation claims.  Nor is the district court's decision in *Neilson* instructive because, as demonstrated above, that case involved a claim for intentional fraud. *See Neilson*, 290 F. Supp. 2d at 1108 (alleging that defendants participated in a Ponzi scheme).

[12] *See also In re Charles Schwab Corp. Sec. Litig.*, 257 F.R.D 534, 545 (N.D. Cal. 2009) (same); *Belodoff v. Netlist, Inc.*, No. SACV 07-00677 DOC (MLGx), 2009 U.S. Dist. LEXIS 39903, at **12-13 (C.D. Cal. Apr. 17, 2009) (same).

**(1)    Ms. Guzman Adequately Alleged The "Who, What, When, Where, And How" Regarding Bridgepoint's Misrepresentations**

The "who" is simple because Ms. Guzman alleges that Bridgepoint executives and staff caused all of the false and misleading statements to be made.  ¶¶ 7, 14, 30, 50.  Moreover, she specifically alleges facts demonstrating which false and misleading statements are attributable to Ashford, and which are attributable to The Rockies:

- "Ashford's Web site claims that the school represents 'higher education made affordable . . . Ashford offers one of the lowest tuition costs available'" (¶ 37).
- The Rockies' "school President Charlita Shelton misleadingly states on the home page of the school's Web site that '*the University's goal is to provide a professional graduate education in psychology to individuals who seek licensure as psychologists*'" (¶ 50) (emphasis original).

She also alleges that a Bridgepoint enrollment advisor called her several times a week during "the one-month period before her enrollment at Ashford in 2006."  ¶ 30.  These allegations satisfy the "who" requirement.

The "what" are the specific false and misleading statements made on Bridgepoint's Web sites and by Bridgepoint's enrollment advisors, as detailed and specifically quoted throughout the Complaint.  *E.g.*, ¶¶ 3, 30, 36, 46, 48, 51-53, 76, 111, 117.  These misrepresentations relate to Bridgepoint's affordability, accreditation, quality, and post-graduation employment prospects.  *See* ¶¶ 3, 30.  For example, a Bridgepoint enrollment advisor told Ms. Guzman specific misstatements about Bridgepoint's affordability and quality, as well as her eligibility for federal financial aid and her ability to obtain post-graduation employment.  ¶ 30.

The "when" is specified, because Ms. Guzman alleges that Bridgepoint enrollment advisors use a uniform misleading script when inducing students to enroll.  *E.g.*, ¶¶ 36, 46.  In her case, that occurred in the month before she enrolled in Ashford in 2006.  ¶¶ 21, 30.  Moreover, the misrepresentations on Bridgepoint's Web sites are made to students whenever they visit the Web site.  ¶ 37.  Ms. Guzman also alleges that Bridgepoint has uniformly employed these misleading tactics throughout the class period.  *See* ¶ 3.

The "where" is sufficiently alleged.  Bridgepoint's false and misleading statements were communicated to Ms. Guzman and the class in two places: on Bridgepoint's Web sites (¶¶ 37,

1    47), and over the phone by Bridgepoint's enrollment advisors (¶¶ 30, 46, 69, 72).  These

2    allegations are more than sufficient to satisfy Rule 9(b), particularly considering that the rule is

3    relaxed in this case because "in cases of corporate fraud, plaintiffs will not have personal

4    knowledge of all the underlying facts."  *Moore*, 885 F.2d at 540.

5         Finally, the "how" is sufficiently alleged because Ms. Guzman identifies Bridgepoint's

6    use of the Internet, print advertisement, and uniform oral scripts.  ¶¶ 3, 21, 30, 33-35.

7         Viewed as a whole, these well-pled allegations more than satisfy Rule 9(b)'s requirement

8    to provide Bridgepoint with "adequate notice."  *Kearns*, 567 F.3d at 1124.  These allegations

9    allow Bridgepoint to pinpoint the timing, location, and content of its misrepresentations with

10   enough specificity to defend against Ms. Guzman's claims.  *Id.*  No more is required.

11        But Bridgepoint asserts, without any legal support, that "[t]hese allegations are patently

12   deficient."  Dkt. No. 27 at 20.  This conclusory assertion is nothing but a denial of Ms.

13   Guzman's allegations and must therefore be rejected.  *See Iqbal*, 129 S. Ct. at 1950 (at the

14   pleading stage, a court must accept as true all "well-pleaded factual allegations").

15        In stark contrast to Bridgepoint's lack of case law support, district courts in California

16   have repeatedly refused to dismiss claims for negligent misrepresentation and violations of the

17   UCL and FAL, based on allegations similar to Ms. Guzman's.  In *Just Film, Inc. v. Protégé*

18   *Investments, Inc.*, for example, the Northern District of California sustained the UCL and FAL

19   claims against certain defendants because they allegedly made misrepresentations to plaintiffs.

20   No. C 10-1993 CW, 2010 U.S. Dist. LEXIS 130230, at **57-58 (N.D. Cal. Nov. 29, 2010).

21   In *Shartisis Friese LLP v. JP Morgan Ret. Servs., LLC*, the Northern District of California

22   refused to dismiss a negligent misrepresentation claim because plaintiff identified the

23   underlying misrepresentation and alleged reliance.  No. 0811064 SC, 2008 U.S. Dist. LEXIS

24   58617, at **6-7 (N.D. Cal. Aug. 1, 2008).  Similarly, this Court in *Peterson v. Bank of America,*

25   *N.A.* sustained a negligent misrepresentation claim because the allegations of false statement,

26   reliance, and injury were "specific enough" to give defendant notice.  No. 09cv2570 WQH

27   (CAB), 2010 U.S. Dist. LEXIS 45399, at **23-24 (S.D. Cal. May 10, 2010).  The reasoning in

28   *Just Film*, *Shartisis*, and *Peterson* applies here precluding dismissal of Ms. Guzman's claims.

**(2)      Ms. Guzman Alleges Reliance With Sufficient Particularity**

**(i)      Ms. Guzman Specifically Alleges That She Relied On Bridgepoint's Misrepresentations**

As discussed above, Ms. Guzman alleges in detail Bridgepoint's misrepresentations regarding its affordability, accreditation, quality, and post-graduation employment prospects. *See*, *e.g.*, ¶¶ 3, 30, 36-54.  Ms. Guzman and other class members were exposed to these misrepresentations through Bridgepoint's Web sites and enrollment advisors. *E.g.*, ¶¶ 30, 35. The Complaint specifically states that she "relied on the misrepresentations . . . in deciding to enroll at Bridgepoint."  ¶ 35; *see*, *e.g.*, ¶¶ 21, 30, 117.

In similar cases, district courts have sustained fraud allegations under a heightened pleading standard.  In *In re Toyota Motor Corp. Hybrid Brake Mktg. Sales, Practices & Prods. Liability Litig.*, for example, plaintiffs, like Ms. Guzman here, "identified specific statements in [defendants'] brochures, marketing materials, and advertisements . . . [,] and allege that they read and relied on those statements in connection with purchasing their vehicles."  2011 U.S. Dist. LEXIS 110206, at *25 (C.D. Cal. Sept. 12, 2011).  Based on these allegations, the Central District of California refused to dismiss plaintiffs' CLRA, UCL, and FAL claims. Similarly, in a related case, the Court held that plaintiffs pled sufficient facts to satisfy the pleading requirements because, like Ms. Guzman, they specified the misrepresentations upon which they relied.  *See Rosendahl,* 2011 U.S. Dist. LEXIS 119735, at **13-14.  For the same reasons, the Court should find Ms. Guzman's allegations of reliance sufficient.  *See also G.K. Las Vegas Ltd. P'ship v. Simon Prop. Group, Inc.*, 460 F. Supp. 2d 1222, 1244 (D. Nev. 2006) (affording plaintiff the benefit of the doubt and holding that he sufficiently pled reliance although his "allegations of justifiable reliance are attenuated at best").

Arguing the contrary, Bridgepoint mistakenly accuses Ms. Guzman of seeking to relax Rule 9(b) based on *Tobacco II*.  *See* Dkt. No. 27-1 at 14-16.  Ms. Guzman does not – and need not – advance any argument for relaxing Rule 9(b)'s standard on reliance because her allegations squarely satisfy the heightened pleading standard.  Nor does Ms. Guzman rely on

1   *Tobacco II* to demonstrate the sufficiency of her allegations on reliance.[13]   Bridgepoint cites a

2   string of inapposite cases.  Each is distinguishable because, unlike Ms. Guzman, plaintiffs in

3   those cases failed to identify the misrepresentations they relied upon.  *See Kearns*, 567 F.3d

4   at1126 (affirming dismissal of a fraud claim because plaintiff failed to "specify which sales

5   material he relied upon in making his decision to buy [the underlying product]"); *Laster*, 407 F.

6   Supp. 2d at 1194 (dismissing the UCL and FAL claims for failure to allege reliance "on

7   [d]efendants' advertisements"); *Palestini v. Homecomings Fin., LLC*, No. 10CV1049-MMA,

8   2010 U.S. Dist. LEXIS 72985, at *30 (S.D. Cal. July 20, 2010) (dismissing a UCL claim for

9   failure to allege a statutory violation).[14]

10   **(ii)   Bridgepoint's Argument Must Fail Because It Prematurely**
11   **Raises A Factual Issue And Because Reliance Is Presumed**

12   Bridgepoint's challenge to the sufficiency of Ms. Guzman's allegations of reliance is

13   misguided at the pleading stage.  Whether Ms. Guzman can prove "reasonable reliance" is a

14   question of fact for the jury and cannot be decided on a motion to dismiss unless "the facts

15   permit reasonable minds to come to just one conclusion."  *Grisham v. Philip Morris U.S.A., Inc.*,

16   40 Cal. 4th 623, 637-38 (Cal. 2007).  In *Makaeff v. Trump University, LLC*, a class action

17   against a school in this District, defendant moved to dismiss former students' claims for, among

18   other things, negligent misrepresentation.  No. 10cv0940 IEG (WVG), 2010 U.S. Dist.

19   LEXIS 108467, at *15 (S.D. Cal. Oct. 12, 2010).  The court refused to consider defendant's

20

21   _____

[13] Ms. Guzman does contend, as demonstrated above, that *Tobacco II* controls the
22   analysis on her statutory standing under Proposition 64, and that under *Tobacco II*, she need not
"demonstrate individualized reliance on specific misrepresentations to satisfy the reliance
23   requirement," because her claims arise from a systemic, six-year-long campaign of false
advertising and dissemination of misinformation.  *Tobacco II*, 46 Cal. 4th at 328.   Bridgepoint's
24   attempt to distinguish *Tobacco II* by relying on *Marchante* is unpersuasive.  *Marchante v. Sony
Corp. of Am.*, No. 10cv0795 JLS (RBB), 2011 U.S. Dist. LEXIS 73755 (S.D. Cal. July 8, 2011)
25   dealt with sufficiency of pleading under Rule 9(b), not Proposition 64.  Moreover, *Marchante*
involved alleged deceptive practices that lasted for merely months.  *Id.* at *12.  In contrast,
26   Defendants' illegal campaign here has lasted for at least *six years* and is ongoing.  Thus,
Bridgepoint's reliance on *Marchante* is misplaced.

27   [14] *See also Marolda v. Symantec Corp.*, 672 F. Supp. 2d 992, 1001 (N.D. Cal. 2009)
(stating merely the unremarkable proposition that reliance must be pled with particularity in
28   fraud claims); *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001) (merely
stating the particularity standard).

argument that plaintiffs failed to sufficiently allege reliance because they signed disclaimers regarding defendant's alleged misrepresentations. *Id.* The court reasoned that "whether [p]laintiffs relied on these alleged misrepresentations is a question of fact." *Id.*

In any event, where false representations are made as to a material matter, an inference or presumption of reliance arises as to the entire class. *Vasquez v. Super. Ct.*, 4 Cal. 3d 800, 814 (Cal. 1971). Here, reliance is presumed because Ms. Guzman alleges Bridgepoint made material uniform misrepresentations concerning the objective features of its classes. For example, Bridgepoint made uniform misrepresentations on its Web sites that:

- Bridgepoint provides "some of the lowest cost tuition programs" (¶¶ 3, 36);
- students would receive a high quality of education (*e.g.*, ¶¶ 3, 5, 29);
- The Rockies is accredited with the American Psychological Association (¶¶ 3, 53);
- a degree from The Rockies would qualify students to obtain professional psychology licenses (¶¶ 3, 88, 101); and
- a degree from Ashford or The Rockies would be identical to a degree from other postsecondary educational institutions (¶ 48).

Moreover, through the Bridgepoint enrollment advisors' uniformly misleading scripted materials, all class members heard identical misinformation regarding all of the foregoing. The class members also heard identical misinformation regarding their federal financial aid options, obligations to repay federal student loans, and inability to discharge these loans in bankruptcy. *See* ¶¶ 30, 79-81. Because each of the misrepresentations was communicated uniformly through Bridgepoint's Web sites (¶¶ 37, 47) and through uniformly scripted sales pitches given by Bridgepoint enrollment advisors (¶¶ 30, 46, 69, 72), reliance is presumed as a matter of law. *Vasquez*, 4 Cal. 3d at 814.

### (3)    Ms. Guzman Pleads Injury-In-Fact With Sufficient Particularity

Ms. Guzman alleges that she "succumbed to Bridgepoint's high pressure recruiting tactics, and relied on Bridgepoint's false advertisement and misstatements before deciding to enroll at Ashford." ¶ 21. Her enrollment caused her to spend thousands of dollars on Bridgepoint's useless classes. *See* ¶¶ 5, 8, 17, 21, 60, 102. No more is required.

Bridgepoint's contrary arguments are merely repetitive of its arguments on standing.

1   Bridgepoint again cites inapposite cases where district courts dismissed the fraud claims for

2   failure to specify the underlying misrepresentation.  *See Brownfield v. Bayer Corp.*, No. 09-cv-

3   0444-JAM-GGH, 2009 U.S. Dist. LEXIS 63057, at *16 (E.D. Cal. July 2, 2009) ("the

4   Complaint provides no detail or specificity as to the purported fraud, nor does it identify any

5   particular misrepresentations upon which Plaintiffs detrimentally relied"); *Laster*, 407 F. Supp.

6   2d at 1194 (same); *Marolda*, 672 F. Supp. 2d at 1002 (same).  In contrast, Ms. Guzman has

7   specified the misrepresentations she relied upon before incurring her injury.  *See, e.g.*, ¶ 30.

8   Accordingly, Bridgepoint's reliance on these cases is misplaced.  The Court should reject

9   Bridgepoint's challenge regarding Ms. Guzman's allegations of injury-in-fact.

10   **IV.   Bridgepoint's Arguments On Rule 8(a) And The CLRA Are Mere Red Herrings**

11          Citing *no* authority, Bridgepoint argues that Ms. Guzman's allegations are implausible

12   because she failed to include them in her first complaint.  This argument is nothing but an

13   attempt to dispute the truth of Ms. Guzman's allegations, which must be deemed as true at the

14   pleading stage.  *Iqbal*, 129 S. Ct. at 1950.  As her detailed allegations reflect, Ms. Guzman has

15   done much more than merely reciting the elements of her claims.  The Complaint sets forth

16   facts regarding Bridgepoint's illegal practices, including its misrepresentations, material

17   omissions, Ms. Guzman's reliance, and her injuries.  *See, e.g.*, ¶¶ 3, 21, 30, 35.  As discussed

18   above, these allegations sufficiently state Ms. Guzman's claims under any pleading standard.

19   Bridgepoint's arguments to the contrary should be rejected.

20          Bridgepoint also urges dismissal of Ms. Guzman's CLRA claim, arguing that she fails

21   to identify "which particular section of the CLRA" Bridgepoint allegedly violated.  Dkt. No.

22   27-1 at 27.  Contrary to this claim, the Complaint identifies that Bridgepoint misrepresented:

23   (1) the true cost of attending Bridgepoint's academic institutions; (2) the quality of academic

24   instruction those institutions provide; (3) their graduates' employability, job placement

25   prospects, and qualification for professional licensure; and (4) prospective students' federal

26   financial assistance options.  ¶ 116.  On the face of these allegations, it is obvious that such

27   sections include California Civil Code §§ 1770(a)(5) ("representing that goods or services have

28   sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do

1   not have . . ."), 1770(a)(7) ("representing that goods or services are of a particular standard,

2   quality, or grade . . . if they are of another"), and 1770(a)(9) ("advertising goods or services with

3   intent not to sell them as advertised").  Thus, Bridgepoint has received adequate notice of Ms.

4   Guzman's CLRA claim.  As a result, Ms. Guzman's allegations are sufficient under Rule 8(a)'s

5   notice pleading requirement.  *See Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514 (U.S. 2002)

6   ("The liberal notice pleading of Rule 8(a) is the starting point of a simplified pleading system,

7   which was adopted to focus litigation on the merits of a claim.").[15]   If the Court concludes that

8   Ms. Guzman has not sufficiently pled which provisions of the CLRA she claims were violated,

9   she respectfully requests leave to amend to correct any such technical deficiency.

## CONCLUSION

11       For the reasons set forth above, the Court should deny Bridgepoint's motion to dismiss

12   the First Amended Class Action Complaint.[16]

13       Should the Court grant Bridgepoint's motion in whole or in part, Ms. Guzman requests

14   leave to amend.  *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1051 (9th Cir. 2003)

15   (the policy favoring liberal interpretation of Rule 15(a) "is to be applied with extreme

16   liberality") (quotation omitted); *see also Makaeff*, 2010 U.S. Dist. LEXIS 108467, at *26

17   (granting leave to amend a negligent misrepresentation claim against a school after dismissal

18   under Rule 9(b)).

19   ///

20   ///

21   ///

22   ///

23   ///

24   ///

---

26       [15] Although the court in *Palestini* held the contrary, the court did not provide any legal support for such holding.  *See Palestini*, 2010 U.S. Dist. LEXIS 72985, at *30.

27       [16] In contrast to its litigation conduct in the related *Rosendahl* action, Bridgepoint has

28   not moved to compel arbitration of any of Ms. Guzman's claims in this action.  The right to arbitration, like any other contract right, can be waived.  *See Van Ness Townhouses v. Mar Indus. Corp.*, 862 F.2d 754, 758-59 (9th Cir. 1988).

1   Dated:  February 14, 2012

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

CHAPIN FITZGERALD
  SULLIVAN & BOTTINI LLP
Edward D. Chapin
Jill M. Sullivan
Francis A. Bottini, Jr.
Douglas J. Brown

          s/ Francis A. Bottini, Jr.
           Francis A. Bottini, Jr.

550 West C Street, Suite 2000
San Diego, California  92101
Telephone:   (619) 241-4810
Facsimile:   (619) 955-5318

*Attorneys for Plaintiff Betty Guzman*