1
2
3
4
5
6
7
8

**UNITED STATES DISTRICT COURT**

9

**SOUTHERN DISTRICT OF CALIFORNIA**

10

11  BETTY GUZMAN, on behalf of herself                    CASE NO. 11cv69 WQH (WVG)
    and all others similarly situated

12                                                        ORDER
                                    Plaintiffs,

13              vs.

14  BRIDGEPOINT EDUCATION, INC.,
    and ASHFORD UNIVERSITY,

15                                  Defendants.

16  HAYES, Judge:

17          The matter before the Court is the Motion to Strike (ECF No. 41) filed by Defendants

18  Bridgepoint Education, Inc. and Ashford University.

19                                  **BACKGROUND**

20          On January 12, 2011, Plaintiff Betty Guzman initiated this action by filing a Complaint.

21  (ECF No. 1).  On March 15, 2011, Defendant Bridgepoint Education, Inc., Defendant Ashford

22  University and the University of the Rockies filed Motions to Dismiss and Strike the

23  Complaint.  (ECF Nos. 12, 13).  On October 19, 2011, the Court granted the Motion to Dismiss

24  as to all claims and denied the Motion to Strike as moot.  (ECF No. 21).

25          On January 4, 2012, Plaintiff filed a First Amended Complaint.  (ECF No. 26).  On

26  January 18, 2012, Defendants filed a Motion to Dismiss the First Amended Complaint (ECF

27  No. 27), which the Court granted in part on May 30, 2012.  (ECF No. 32).

28          On August 9, 2012, Plaintiff filed the Second Amended Complaint –  the operative

complaint in this case – against Defendant Ashford University ("Ashford") and Defendant Bridgepoint Education, Inc. ("Bridgepoint") (collectively, "Defendants").  (ECF No. 39).

On August 30, 2012, Defendants filed a Motion to Strike the Second Amended Complaint.  (ECF No. 41).  On October 1, 2012, Plaintiff filed an opposition.  (ECF No. 44).  On October 22, 2012, Defendants filed a reply.  (ECF No. 45).

## ALLEGATIONS OF THE COMPLAINT

Plaintiff proposes a nationwide class action "composed of all persons who enrolled in and/or attended classes at Defendant Ashford University ('Ashford'), which is operated by Defendant Bridgepoint Education, Inc. ('Bridgepoint' or the 'Company,' and collectively referred to, together with Ashford, as 'Defendants'), during the period approximately from March 1, 2005 through the present (the 'Class Period')."  (ECF No. 39 at ¶ 1, 28).  "During the Class Period, Bridgepoint and Ashford violated California's consumer protection statutes and common law."  *Id.* at ¶ 1.

"Bridgepoint is a for-profit higher education company headquartered in San Diego, California. The Company owns and operates two academic institutions, Ashford and University of the Rockies ('The Rockies'), which offer Associate, Bachelor's, Master's and Doctoral programs primarily online, although Ashford also maintains campuses in Clinton, Iowa, and The Rockies in Colorado Springs, Colorado."  *Id.* at  ¶ 2.  The University of the Rockies is a "non-party" and was "founded by Bridgepoint in September 2007 to run the college formerly known as Colorado School of Professional Psychology.  The Rockies maintains a small campus in Colorado Springs, Colorado, but 99% of the institution's students are enrolled only in an 'online' program." *Id.* at  ¶ 24; *see also* at ¶¶ 2, 3, 22, 25, 27, 34, 36, 41, 48, 53, 54, 55, 69, 90 (references to "The Rockies").

Bridgepoint "engaged in a pattern of improper and unlawful conduct in order to recruit students and over-charge the federal government for federal financial aid...."  *Id.* at ¶ 3.  Defendants use "standardized, misleading recruitment tactics," including: (a) concealing from students "both before and during their enrollment, material information, which Defendants were obligated to disclose under Title IV of the Higher Education Act of 1965 ('Title IV'), the

California Private Postsecondary Education Act of 2009 (the 'CPPEA'), other federal and state laws and regulations, and the rules and regulations of accreditation organizations"; (b) "misrepresent[ing] the true cost of attendance by falsely claiming that Ashford and The Rockies provide 'some of the lowest cost tuition programs available,' quoting to prospective students false and misleading tuition rates for degree programs, and failing to disclose substantial non-tuition costs such as administrative fees"; (c) misrepresenting "the quality of academic instruction"; and (d) misrepresenting "employability and earnings potential" for graduates. *Id*. at ¶ 3. Defendants "made these misrepresentations, and failed to disclose material information, in three ways: (a) through standardized written materials ... (b) through uniform scripted oral misrepresentations made by the schools' enrollment advisors; and (c) through material omissions of information that Defendants had a duty to disclose under Title IV, the CPPEA, other state and federal laws and regulations, as well as the rules and regulations of accreditation organizations." *Id*. at ¶ 4. Plaintiff and other class members "relied on, and were misled by, such misrepresentations and concealment when deciding to begin and continue their enrollment at Ashford." *Id*.

Defendants pressured the enrollment advisors to employ illegal recruiting techniques including setting quotas for admissions. *Id*. at ¶¶ 7-9. Defendants misleadingly encourage students to apply for more federal financial aid than they need. *Id*. at ¶¶ 10-11. Defendants fail to inform students that the percentage of students who default on their students loans is higher at Bridgepoint schools than other institutions. *Id*. Defendants fail to inform students that they will be required to begin repaying their loans immediately upon enrollment. *Id*. Defendants exploit federal education funding for veterans:

> 14. Bridgepoint is motivated to make these misrepresentations to induce prospective students to apply for federal student loans in maximum allowable amounts, in part because Bridgepoint can derive up to 90% of its total revenues from federal funding. Title IV allows for-profit universities to secure all but ten percent of their total funding from the federal government, including federal student loan money, a requirement known as the "90/10" rule. Defendants' executives are aware of this ceiling and discuss ways in which to reach the 90% maximum, including by pressuring students to "max out their federal loans."

> 15. Defendants also specifically target active military and military veterans for their misleading recruitment practices to capture additional profits. The money Bridgepoint receives from veterans, largely via federal tuition assistance

programs, such as the Post-9/11 GI Bill, does not count towards the 90% cap, even though it is federal money. Defendants exploit veterans and active military to end-run the 90/10 rule, all in the name of profit.

16. Bridgepoint devotes significant energies to this end-run of the 90/10 rule by dedicating divisions of its enrollment advisors to focus on military recruitment. Bridgepoint sends these divisions to bases to recruit active duty personnel and veterans in person. These advisors are trained to engage in the same misleading practices to recruit and enroll as many students as possible, without regard for the recruits' best interests.

*Id*. at ¶¶ 14-16; *see also id.* at ¶¶ 61-69, 78, 82 (allegations that Defendants target veterans).

Plaintiff "enrolled in online courses with Ashford in 2006 after speaking with an online enrollment advisor and being exposed to Bridgepoint's false advertisements, statements, and material omissions regarding, among other things, the tuitions and costs, federal financial aid, quality of education, accreditation, and post-enrollment employment prospects." *Id.* at ¶ 21. Plaintiff "succumbed to Bridgepoint's high pressure recruiting tactics, and relied on Bridgepoint's false advertisements, misstatements, and omissions before and after deciding to enroll at Ashford." *Id.* Plaintiff "completed approximately 20 online courses." *Id.* "Ashford alleges that she owes them over $3,600, and refuses to issue her diploma and release her transcripts." *Id.*

Bridgepoint "recklessly or negligently employs false and misleading marketing tactics designed to entice prospective students to enroll at its universities and apply for federal loans they do not need and cannot pay back." *Id.* at ¶ 29. Plaintiff's "initial contact with Bridgepoint started through the Internet." *Id.* at ¶ 30. "In the one-month period before [Plaintiff's] enrollment at Ashford in 2006, a Bridgepoint enrollment advisor used high-pressure sales tactics on her by calling her several times a week." *Id.*

During that period, the Bridgepoint enrollment advisor made numerous misrepresentations to Ms. Guzman, including:

Bridgepoint schools offered the most affordable education to students, and the tuition and costs were the "lowest" and could not be found elsewhere;

Federal financial aid would cover all tuition, books, fees, and other costs, including costs for purchasing computers and software;

The need to enroll as soon as possible and to apply for maximum financial aid was urgent;

1          Bridgepoint schools are fully accredited, and all credits awarded by
2          Bridgepoint schools are transferable to other higher education
        institutions; and

3          A high percentage of Bridgepoint graduates found jobs in their fields
        of studies immediately following graduation, and earned tens of
4          thousands of dollars in annual income.

5  *Id.*  Plaintiff "is one of the tens of thousands of students who fell victim to Bridgepoint's

6  systemic false advertisements, material omissions, dissemination of misstatements, and

7  boiler-room pressure recruiting tactics."  *Id.; see also id.* at ¶¶ 81-82 ("Plaintiff's claims are

8  typical of the claims of the class" and "questions of law or fact arise from Defendants' ...

9  conduct that is common to the class").

10       Plaintiff asserts five claims for relief: (1) violation of California Business and

11  Professions Code § 17200; (2) violation of California Business and Professions Code § 17500,

12  et seq.; (3) violation of the Consumer Legal Remedies Act, California Civil Code § 1750, et

13  seq.; (4) violation of California Civil Code § 1710(3); and (5) negligent misrepresentation.  *Id.*

14  at 35-42.

15                          **APPLICABLE STANDARD**

16       Rule 12(f) of the Federal Rules of Civil Procedure states that a court "may strike from

17  a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous

18  matter."  Fed. R. Civ. P. 12(f).  "Immaterial matter is that which has no essential or important

19  relationship to the claim for relief or the defenses being plead." *Fantasy, Inc. v. Fogerty*, 984

20  F.2d 1524, 1527 (9th Cir. 1993) (overruled on other grounds by *Fogerty v. Fantasy, Inc*., 510

21  U.S. 517 (1994)).  "Impertinent matter consists of statements that do not pertain, and are not

22  necessary, to the issues in question." *Fantasy, Inc.*, 984 F. 2d at 1527.  Ultimately, whether to

23  grant a motion to strike lies within the sound discretion of the district court.  *Id.* at 1528.

24       Motions to strike are generally regarded with disfavor and "should not be granted unless

25  it is clear that the matter to be stricken could have no possible bearing on the subject matter

26  of the litigation."  *Neveau v. City of Fresno*, 392 F. Supp. 2d 1159, 1170 (E.D. Cal. 2005)

27  (citation omitted).  "[C]ourts are reluctant to determine disputed or substantial questions of law

28  on a motion to strike." *S.E.C. v. Sands*, 902 F. Supp. 1149, 1166 (C.D. Cal. 1995).  However,

granting a motion to strike may be proper if it will make trial less complicated or eliminate serious risks of prejudice to the moving party, delay, or confusion of the issues. *Fantasy, Inc.*, 984 F. 2d at 1527-28.

## DISCUSSION

Defendants contend that the Court should strike the following allegations pursuant to Federal Rule of Civil Procedure 12(f): (1) allegations referring to previously-dismissed claims for breach of contract and breach of the implied covenant of good faith and fair dealing; (2) allegations referring to the University of the Rockies ("The Rockies"); (3) allegations of military recruitment; and (4) the class definition. (ECF No. 41 at 2).

## I.     Allegations Referring to Previously Dismissed Claims

Defendants contend that allegations referring to claims for breach of contract and breach of the implied covenant of good faith and fair dealing are immaterial in light of this Court's October 19, 2011 Order (ECF No. 21 (granting Defendants' motion to dismiss and dismissing the claims for breach of contract and breach of the implied covenant of good faith and fair dealing)). (ECF No. 41-5 at 5-7). Defendants contend that these allegations "may result in negative inferences against Defendants" and should be stricken from the Second Amended Complaint. *Id.*[1]

Plaintiff asserts that "[i]t is true that [Plaintiff] no longer asserts a claim for breach of contract or breach of the implied covenant of good faith and fair dealing." (ECF No. 44 at 14). However, Plaintiff contends that allegations that Bridgepoint breached its contractual obligations should not be stricken because those allegations are "derived from its course and pattern of misconduct" and are relevant to the claims asserted in the Second Amended Complaint. *Id.* Plaintiff further contends that Defendants have failed to show that they are prejudiced by the allegations. *Id.* at 16.

In this case, on October 19, 2011, the Court granted Defendant's motion to dismiss the original Complaint. (ECF No. 21). The Court stated, in pertinent part:

---

[1]Specifically, Defendants request that the Court strike references to these previously-dismissed claims found in paragraphs 82 and 97 of the Second Amended Complaint. (ECF No. 41-1 at 6).

To the extent that Plaintiff alleges a contract was formed by Defendants promising to provide an affordable education at a low price which would qualify her for post-graduate professional licensure; Plaintiff has failed to allege facts sufficient to show a meeting of the minds or mutual intent to contract. The Court finds that Plaintiff's conclusory allegations regarding breach of contract are insufficient to 'provide the 'grounds' of [her] 'entitle[ment] to relief.'' *Bell Atl. Corp. v. Twombly*, 550 U.S. at 555 (quotation omitted); *see also Ashcroft v. Iqbal*, 129 S. Ct. at 1950....

Plaintiff has failed to allege facts sufficient to show the existence of a contract. Accordingly, the Court finds that Plaintiff has failed to allege facts sufficient to show that Defendants injured her right to receive the benefits of the agreement. The Court concludes that the Complaint fails to allege sufficient facts to support a claim for breach of the implied covenant of good faith and fair dealing. Accordingly, Defendants' Motion to Dismiss Plaintiff's first claim for breach of contract and second claim for breach of implied covenant of good faith and fair dealing is granted.

*Id.* at 5-6. In the Second Amended Complaint, Plaintiff alleges that the following "question[] of law or fact" is common to the class: "whether Defendants breached the implied covenant of good faith and fair dealing implied in student enrollment contracts." (ECF No. 39 at ¶ 82). Plaintiff also alleges that "Defendants' conduct was and is 'unlawful' because Defendants violated Business and Professions Code § 17200 *et seq.* because they breached their contracts with Plaintiff and the Class, breached the implied covenant of good faith and fair dealing...." *Id.* at ¶ 97.

Plaintiff does not assert claims for breach of contract or breach of the implied covenant of good faith and fair dealing in the Second Amended Complaint. The Court concludes that allegations referencing these previously-dismissed claims have "no essential or important relationship to the [remaining] claims for relief" and raise a "serious risk of ... confusion of the issues." *Fantasy, Inc.*, 984 F.2d at 1527-28. The Court will strike the allegations found in paragraphs 82 (ECF No. 39 at 33, lines 11-12) and 97 (*Id.* at 36, lines 8-10) of the Second Amended Complaint which reference claims for breach of contract and breach of the implied covenant of good faith and fair dealing.

## II.   Allegations Referring to The Rockies and Military Recruiting Tactics

Defendants assert that the Court issued an Order on May 30, 2012 dismissing The Rockies as a defendant. (ECF No. 41-1 at 5 (citing ECF No. 32)). In light of this Order, Defendants contend that allegations referring to The Rockies are "irrelevant" and should be

1  stricken.  *Id.* at 6.[2]  Defendants further contend that allegations referencing any military

2  recruiting tactics should be stricken because "Plaintiff fails to allege she was injured as a result

3  of Defendants' purported military recruitment tactics" and "lacks standing to sue on ...

4  allegations [of military recruitment tactics]."  *Id.* at 9.[3]

5         Plaintiff contends that her allegations referring to The Rockies are relevant because

6  "The Rockies is an integral part of Bridgepoint and its scheme to induce students to enroll. The

7  Rockies is one of Bridgepoint's two subsidiary schools.  As [Plaintiff] alleges, both Ashford

8  and The Rockies employ the *same* illegal tactics and make the *same* misrepresentations and

9  concealments regarding the costs and quality of their classes."  *Id.*  Similarly, Plaintiff contends

10 that the Court should refuse to strike references to military recruitment tactics on the grounds

11 that these "references ... reflect [Defendants'] pattern of misconduct and are an integral part

12 of [Plaintiff's] claims."  (ECF No. 44 at 14).

13        In its May 30, 2012 Order, this Court stated:

14        Plaintiff has not alleged that she had any contact with the Rockies.  Plaintiff has
          not alleged that she relied on any misrepresentations by the Rockies.  Plaintiff
15        has not alleged that she enrolled or attended courses at the Rockies.  Plaintiff has
          not alleged that she incurred any debt as a result of misrepresentations by the
16        Rockies.  The Court finds that Plaintiff has failed to allege sufficient facts to
          show injury in fact, causation, and redressability regarding her claims against the
17        Rockies.  The Court finds that Plaintiff lacks standing to assert claims against
          the Rockies.
18
   (ECF No. 32).
19
20        In the Second Amended Complaint, Plaintiff does not assert any claims against The

21 Rockies, nor does she allege that she was personally subjected to any "military recruiting

22 tactics."  However, after viewing the pleadings in the light most favorable to the non-moving

23 party, the Court does not find, at this stage in the proceedings, that these allegations "could

24 have no possible bearing on the subject matter of this litigation."  *Neveau*, 392 F. Supp. 2d at

25
26        [2]Defendants request that the Court strike references to The Rockies found in paragraphs
   2, 3, 22, 24, 25, 27, 34, 36, 41, 48, 53, 54, 55, 69, and 90 of the Second Amended Complaint.
27 (ECF No. 41-1 at 6).

28        [3]Defendants request that the Court strike the entirety of paragraphs 15, 16, 61-69 and
   78, as well as references to military recruiting tactics found in paragraphs 37 and 82.  (ECF No.
   41-1 at 10).

1170; *see also Cal. Dept. of Toxic Substances Control*, 217 F. Supp. 2d at 1033.  The Court

declines to strike allegations referencing military recruiting tactics or The Rockies from the

Second Amended Complaint.  *See Neveau*, 392 F. Supp. 2d at 1170.

### III.   Class Definition

Defendants contend that "references to the existing class definition should be stricken"

from the Second Amended Complaint.  (ECF No. 41-4 at 8-9).  Defendants assert that this

Court, in a related case, found Ashford enrollment agreements requiring arbitration to be valid

and enforceable.  (*Id.* at 8 (citing *Rosendahl v. Bridgepoint Education, Inc.*, S.D. Cal., Case

No. 3:11-cv-0061-WQH-WVG)).  Defendants assert that "Ashford began including arbitration

provisions in its Enrollment Agreements no later than May 18, 2007."  *Id.* at 7.  Defendants

contend that "the class, as defined, cannot be maintained" because it encompasses individuals

who enrolled at Ashford after May 18, 2007 and lack standing to sue.  *Id.* at 9.

Plaintiff contends that the motion to strike "prematurely raises class-certification issues"

that should be raised "under Rule 23 after discovery, and not under Rule 12(f) at the pleading

stage."  (ECF No. 44 at 9).  Plaintiff asserts that the Second Amended Complaint "alleges Rule

23's requirements, including numerosity, typicality, commonality, adequacy, and superiority"

and that "[t]hese allegations must be accepted as true at the pleading stage."  *Id.* at 10.  Plaintiff

asserts that "Defendants rely on an affidavit of their own employee and six purported form

enrollment agreements," which "are neither pleadings nor subject to judicial notice."  *Id.* at 9.

Plaintiffs contend that "the Court may not consider evidentiary issues at the pleadings stage."

*Id.*

"While ... class allegations may be stricken at the pleading stage, the granting of

motions to dismiss class allegations before discovery has commenced is rare. Indeed, while

there is little authority on this issue within the Ninth Circuit, decisions from courts in other

jurisdictions have made clear that dismissal of class allegations at the pleading stage should

be done rarely and that the better course is to deny such a motion because the shape and form

of a class action evolves only through the process of discovery."  *In re Wal-Mart Stores, Inc.*

*Wage & Hour Litig.*, 505 F. Supp. 2d 609, 615 (N.D. Cal. 2007) (internal quotations omitted)

11cv69 WQH (WVG)

1   (citing *Myers v. MedQuist, Inc.*, No. 05-4608, 2006 WL 3751210, *4 (D. N.J. 2006) (declining

2   to strike class allegations because discovery had not yet commenced and observing that most

3   courts deny such motions if brought prior to discovery); *see also Abdallah v. Coca-Cola Co.,*

4   *No. Civ.A.* 1:98CV3679-RW, 1999 WL 527835 (N.D. Ga. 1999) (dismissal of class allegations

5   prior to discovery premature); *see also* 7AA Charles Alan Wright, Arthur R. Miller & Mary

6   K. Kane, Federal Practice and Procedure Civil § 1785.3 (3d 2005) (the practice employed in

7   the overwhelming majority of class actions is to resolve class certification only after an

8   appropriate period of discovery)).

9       In *General Telephone Co. of the Southwest v. Falcon*, 457 U.S. 147, 160 (1982), the

10   United States Supreme Court explained that it is sometimes possible to determine from the

11   pleadings alone that the requirements of commonality, typicality and adequacy cannot possibly

12   be met.  In such cases, striking class allegations before commencing discovery is appropriate.

13   *Id.*; *but see Mancini v. Ins. Corp.*, No. 07cv1750-L(NLS), 2008 U.S. Dist. LEXIS 43954, at

14   9-10 (S.D. Cal. May 29, 2008) ("[T]he Court cannot consider materials outside the pleadings

15   when ruling on a motion to strike. A motion to strike is comparable to a motion to dismiss in

16   that the grounds for a motion to strike must appear on the face of the pleading under attack.

17   Further, before a motion to strike can be granted the Court must be convinced that there are

18   no questions of fact, that any questions of law are clear and not in dispute, and that under no

19   set of circumstances could the defenses [or claims] succeed." (internal quotations omitted));

20   *see also Fantasy, Inc.*, 984 F. 2d at 1528 (citing William W. Schwarzer et al., Cal. Prac. Guide:

21   Fed. Civ. Pro. Before Trial 9:403 (TRG 1992) (grounds for motion to strike must appear on

22   face of pleading or from matters which court may judicially notice)).

23       In the Second Amended Complaint, Plaintiff asserts:

24     Plaintiff brings this action both on behalf of herself and as a class action under F.R.C.P. 23(a) and 23(b) on behalf of the following Class:

25

26     All persons in the United States who enrolled in and/or attended classes offered by Bridgepoint Education, Inc. through Ashford University during the period from approximately March 1, 2005 through the present (the 'Class Period').

27   Excluded from the class are defendants, defendants' immediate families, subsidiaries, affiliates, successors-in-interest, representatives, trustees,

28   executors, administrators, heirs, assigns or transferees, any person acting on behalf of defendants, all governmental entities, and co-conspirators.

1    (ECF No. 39 at 21).

2         Defendants have not requested that this Court take judicial notice of any documents

3    attached to the Motion to Strike, and the Court has not done so.  The Court cannot determine

4    from the face of the Second Amended Complaint that "there are no questions of fact, that any

5    questions of law are clear and not in dispute, [or] that under no set of circumstances could the

6    ... [claims] succeed" based on the proposed class definition.  *Mancini*, 2008 U.S. Dist. LEXIS

7    43954 at 9-10.  The Court declines to strike the class definition from the Second Amended

8    Complaint.

9                                        **CONCLUSION**

10        IT IS HEREBY ORDERED that the Motion to Strike (ECF No. 41) filed by Defendants

11   Bridgepoint Education, Inc. and Ashford University is GRANTED in part.  The Court strikes

12   the allegations referencing claims for breach of contract and breach of the implied covenant

13   of good faith and fair dealing found in paragraphs 82 (ECF No. 39 at 33, lines 11-12) and 97

14   (*Id.* at 36, lines 8-10) of the Second Amended Complaint.

15   DATED:  February 13, 2013

16

17                                    **WILLIAM Q. HAYES**
                                      United States District Judge

18

19

20

21

22

23

24

25

26

27

28